# Haring, Appellant, *v.* Connell.

*Negligence—Automobiles—Highways—Reckless driving — Responsibility for operation of automobiles—License tag—Dealers' license—Contributory negligence—Question for jury.*

1. In an action to recover damages for personal injuries sustained by reason of the alleged negligent operation of defendants' automobile, the questions of defendants' negligence and plaintiff's contributory negligence are for the jury where it appears that the plaintiff, while waiting for a trolley car, was sitting on a wooden wing or approach to a public bridge six and one-half feet distant from the traveled part of a public road where it turned at right angles to cross the bridge; that an automobile, equipped with bright headlights and bearing a dealer's license tag issued to the defendants, while going down the road and attempting to make the turn at the bridge ran into the frame approach where the plaintiff was sitting and caused the injuries complained of; there being testimony warranting the inference that the car was being operated in a careless way as it approached the turn.

2. In such a case proof by the plaintiff that the automobile in question bore a dealer's license tag, issued to the defendants at a lower rate than the charge for the ordinary license, under a provision of the Act of April 21, 1911, P. L. 74, that it should "not be used for any other purposes than testing or demonstrating a vehicle to a prospective purchaser, or in removing the same from place to place for the purpose of sale," upon a sworn application in writing by the defendants stipulating that the tags to be issued to them should not be used for any other purpose, raises the presumption that the defendants had complied with the Act of Assembly and that the tag was on a car operated by them or by some one for them.

Argued Feb. 9, 1914. Appeal, No. 336, Jan. T., 1913,

by plaintiff, from order of C. P. Bucks Co., March T.,
1913, No. 12, refusing to take off nonsuit in case of
Owen Haring v. L. M. and C. A. Connell. Before FELL,
C. J., BROWN, MESTREZAT, STEWART and MOSCHZISKER,
JJ. Reversed.

Trespass to recover damages for personal injuries.
Before HENRY, P. J., specially presiding.

The opinion of the Supreme Court states the case.

At the close of the plaintiff's case the court entered a
nonsuit, which it subsequently refused to take off.

*Error assigned* was the refusal to take off nonsuit.

*Calvin F. Smith,* with him *Henry A. James,* and
*Smith, Paff & Laub,* for appellant.

*Harman Yerkes,* with him *Thomas & George Ross,* for
appellees.

OPINION BY MR. JUSTICE BROWN, March 16, 1914:

Shortly after seven o'clock in the evening of September 4, 1912, the appellant, while waiting for a trolley car
to go to his home, was sitting on a wooden wing or approach to a public bridge which crossed a canal in Durham Township, Bucks County. A public road north of
the approach runs nearly parallel to the canal. At the
bridge it turns almost at right angles and crosses the
canal. An automobile coming down this road, instead
of safely making the turn at the bridge, ran into the
frame approach to the same at the point where the appellant was sitting, the mud guard of the machine pinning him against the wing or approach and scraping the
skin and tissue from one of his legs. In this action
which he brought against the appellees, alleged to have
been operating the automobile, the court ordered a nonsuit, on the ground, as we gather from what was said
by the trial judge at the time he directed the judgment

to be entered, that there was no evidence that the automobile was being operated at the time of the accident by the defendants, or by any one acting for them. On this appeal two other reasons are urged for sustaining the nonsuit: (1) the absence of any proof of negligence in the operation of the automobile; and (2) the contributory negligence of the plaintiff. These reasons will be first considered.

There was no testimony as to the mile rate of speed at which the automobile came down the road and turned in towards the bridge. The testimony of the plaintiff was, "It was traveling fast; it was coming very fast." Another witness, who did not see the machine coming, but heard it approaching while sitting in his house a short distance away, said it was coming at a rate of speed greater than that of machines as they approached the bridge over the canal; and a third witness, who was in the same house at the time of the collision, testified that he heard it coming at an unusual speed, followed by a crash. Conceding this testimony in itself to be insufficient to show that the collision resulted from the operation of the automobile at an undue or dangerous rate of speed on the public highway, the jury could fairly have found from all the testimony that it was due to the careless and reckless driving of the machine as it approached the turn at the bridge. Bright front lights were on it, and the driver could see where he was going. If he was looking in front of him, as was his duty, he must have seen the turn in the road before he reached it and in time to have enabled him to so control the car that it would pass safely around the turn, which was twenty-five feet in width. Instead of doing so it crashed into the wooden approach to the bridge and with such impact that the collision was heard by the persons in the nearby house. A fair inference to be drawn from all the testimony is that the car was being operated in a careless way as it approached the turn towards the bridge, and that the collision was due to such operation. As to

the alleged contributory negligence of the appellant, it need only be said that, when he took a seat on top of the guard or wing to wait for a trolley car, he was six and one-half feet distant from the traveled part of the turn in the road, and it cannot, therefore, be said, as a matter of law, that when he saw the automobile coming towards him, he ought to have anticipated that it would leave that part of the road and run into him: Prinz v. Lucas, 210 Pa. 620.

The only evidence which appellant offered to show that appellees were operating the automobile was the number of the license tag upon it. This tag represented a license which had been issued to them. The court below sustained the contention of their counsel that this was insufficient to fix any responsibility upon them for the operation of the car. If the license which had been issued to them was the ordinary one issued to the owner of an automobile, the burden might have been upon the appellant to show more: Lotz v. Hanlon, 217 Pa. 339; for it may be, as counsel for appellees contend, that under the twenty-third section of the Act of April 27, 1909, P. L. 265, an ordinary license is prima facie evidence of the operation of an automobile by the registered owner only in proceedings instituted for the recovery of fines and penalties prescribed by the said act. But this is a question which we need not now decide, in view of the kind of license tag that was upon the automobile which injured the appellant. It was "X-3176" and was for what the statute defines as a dealer's license, issued at a lower rate than is charged for the ordinary license issued to an automobile owner. This tag was issued to and accepted by the appellees upon condition that it should "not be used for any other purposes than testing or demonstrating the vehicle to a prospective purchaser, or in removing the same from place to place for the purpose of sale": Act of April 21, 1911, P. L. 74. It appeared from the records of the State Highway Department that on May 22, 1912, the appellees made

application in writing for the registration of motor vehicles in the dealers' class, and in their application they stipulated that the tags to be issued to them should not be used for any other purpose than testing or demonstrating a vehicle to a prospective purchaser, or in removing the same from place to place for test and sale. This application was sworn to by the appellees, and, upon the payment of the license fees, dealers' tags were issued to them. One of these was on the car which ran into the appellant, and, as it was issued upon the express condition stated, the presumption is that the appellees had complied with the act of assembly and that the tag was on a car operated by them, or by some one for them, for the purpose of demonstrating it to a prospective purchaser or in taking it to some place for the purpose of sale. The tag was, therefore, prima facie evidence that, at the time of the collision, the appellees, or some one acting under their authority, were operating the car, and the burden was shifted to them of showing that it was not so operated.

Assignments of error sustained and judgment reversed with a procedendo.