## Reed v. Bennett et al., Appellants.

*Negligence — Automobiles — Question of ownership — License plates—Evidence—Presumptions—Act of June 30, 1919, P. L. 678 —Principal and agent.*

1. All that a license tag on a motor vehicle implies under the Act of June 30, 1919, P. L. 678, is prima facie ownership, and its presence in itself does not establish liability for negligence.

2. In order to fix liability for an accident resulting from an automobile collision, it is necessary for plaintiff to show, not only that the car belonged to defendant, but that it was engaged in and about his business by him or by an employee or agent at the time the injury occurred.

3. In an action to recover for personal injuries, it is reversible error for the court to charge that defendants, who were dealers, were liable if they permitted their dealer's license plates to be put on the car with their knowledge and consent, if it appears that the car was driven by an employee of defendants, in company with another employee, who was purchasing it from defendants, and had paid part of the purchase money.

4. The circumstance that the prospective purchaser was one of defendants' employees, and that the driver, his coemployee, operated the car after usual working hours in pursuance of a request made by the purchaser, is material in determining the driver's relation to defendants at the time of the accident.

5. In such case, the legal situation is an entirely different one from that which would exist, if a dealer should permit the use of his license plates on a motor vehicle not owned by him, or not operated by his employee, or for a purpose other than demonstrating it for a prospective purchaser, or testing it or removing it from place to place.

Argued Oct. 13, 1922. Appeal, No. 51, Oct. T., 1922, by defendants, from judgment of C. P. Allegheny Co., Oct. T., 1920, No. 296, on verdict for plaintiff, in case of I. B. Reed v. Louis Bennett and Solomon Bennett, trading as Bennett Bros. Before WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Trespass for personal injuries. Before CARNAHAN, J.
The opinion of the Supreme Court states the facts.
Verdict and judgment for plaintiff for $21,200. Defendants appealed.

*Errors assigned,* inter alia, were (1) portion of charge, quoted in the opinion of the Supreme Court, and (4) in refusing judgment for defendants n. o. v., quoting record.

*Arthur O. Fording,* with him *Ben Paul Brasley* and *Charles F. Patterson,* for appellants.—When a motor vehicle on the highway is owned by a dealer, and bears his license plate, the owner's liability for the driver's negligence depends upon the car being on the owner's business, as in the case of any other owner: Parker v. Motor Car Co., 241 Pa. 461.

The presumption that it was defendant's car was not even attacked, if we read the record aright. That defendants had knowledge of the license plate on it was found by the jury,—never was material,—and is not now denied. But whether the car was on defendant's business was expressly withheld from the jury.

The fact that defendants had full knowledge of what was going on did not make them liable; so long as they

did not retain control of the experiment: Beatty v. Firestone, 263 Pa. 271; Scheel v. Shaw, 252 Pa. 451.

*Oliver K. Eaton,* with him *Clarence Burleigh,* for appellee.—The case at bar resembles that of Herrington v. Hill, 60 Pa. Superior Ct. 202.

Once the presumption from the use of the tag had been raised, the burden of proof shifted to defendants; this defense was affirmative in character, and, in the absence of evidence to support it, was not to be submitted to the jury; therefore, the only thing to be submitted to the jury was the knowledge and consent as to the matter of the license plates: Holzheimer v. Lit Bros., 262 Pa. 150; Theil v. Wolfe, 77 Pa. Superior Ct. 312.

OPINION BY MR. JUSTICE SCHAFFER, January 3, 1923:

Defendants appeal from a judgment on a verdict recovered against them by plaintiff for damages sustained by him in a collision between an automobile in which he was riding and one belonging to them. In the disposition we shall make of the case, the circumstances of the accident become unimportant.

Defendants were dealers in automobiles and as such possessed dealer's license plates. They owned the second-hand automobile which collided with plaintiff's car. One Lyda was in their employ and had taken the car, which was out of condition, to his home for the purpose of putting it in running order, with the understanding that if he did so, defendants would sell it to him for $175. He had the automobile in his possession for three or four months prior to the day of the accident when he paid appellants $25 on account of the purchase price and with their permission obtained the dealer's license plates belonging to them to enable him to operate it to see whether it would run satisfactorily. Appellants refused to let him drive the car himself and the arrangement was made that it should be driven by another of their employees named Seibert; while the latter was driving it,

after midnight, Lyda being with him, the collision occurred. Just what Seibert's relation was to the appellants at the time of the accident is, as we view the case, one of its critical and controlling questions.

The trial judge made the case turn, not on the relation of the driver of the automobile to appellants, or whether he was engaged at the time on their business, but on the circumstance that their license plates had been put on the car with their knowledge and consent. He instructed the jury (first assignment of error), "The defendants did not have any general license plate at all and don't claim to have any general license plate; and, therefore, it is not a question, as I look at it, whether these parties were on the business of this defendant or not. That is not the question in this case at all. The question in this case is, did these men, who had that machine out that night, have this license on that machine with the knowledge and consent of these defendants. That is the question in the case, and, if you find that they did have it there on the machine, with the knowledge and consent of one of these defendants,—it was a partnership and both were bound by it,—then the defendants are responsible for whatever happened in the driving of that machine that night." The court accentuated this view of the case by the further instruction: "It does not make any difference whether the defendants owned that car or not if they allowed their license plate to be put on it. If you find they allowed a license plate to be put on that car that night, they are responsible for what happened, if there was negligence in the operation of the car."

The trial judge relied on the 7th section of the Motor Vehicle Act of June 30, 1919, P. L. 678, for the position he thus assumed; it reads, "No person or persons shall use or permit the use of the plates issued under a dealer's registration on any motor vehicle other than those owned by such dealer and operated by such dealer or his employees, or for any purpose other than demonstrating said vehicle to a prospective purchaser, or testing, or re-

moving same from storage place, shipping point, or place of delivery before or after sale." It will be observed that the motor vehicle in question was owned by defendants, that it was operated by a person in their employ, and that the license tags were given into the possession of the prospective purchaser for the purpose of testing and demonstrating whether the car would operate, so that so far as defendants were concerned, they had complied with the requirements of the act. The legal situation is an entirely different one from that which would exist if a dealer should permit the use of his license plates on a motor vehicle not owned by him, or not operated by his employee, or for a purpose other than demonstrating it to a prospective purchaser or testing it or removing it from place to place. In any of these instances, the dealer would have violated the express mandate of the law, and responsibility under circumstances which can be imagined might flow to him from such violation, but here, defendants did not violate the law, and the fact that their license plates were on the car does not in itself fix them with liability under the peculiar circumstances before us. Section 30 of the Act fixes the legal effect of the presence of license plates on an automobile by providing that "In any proceeding......for damages growing out of the use or operation of a motor vehicle, the registration number displayed on such motor vehicle shall be prima facie evidence that the owner of such vehicle was then operating the same." This makes it obvious that the preceding (7th) section of the act, in the mind of the court when he charged the jury, could not have the effect he ascribed to it. All that the license tags on a motor vehicle imply is prima facie evidence of ownership and their presence in itself does not establish liability for negligence.

Appellants had the right to permit Seibert as their employee, they being the owners of the car, to operate it with their license plates; having the right to drive it under their license for the purpose of demonstrating or

testing, if he used the car for purposes of his own and not on their business and not to demonstrate or test it, they could not be visited with liability for his negligent act beyond the scope of what he was authorized to do for them. With their sanction, having obtained the license plates for a purpose covered by the act, had he attempted to make way with the car with intent to steal it and accident resulted, the defendants would be no more liable than if, in the first instance, he had stolen the automobile and license plates.

It is manifest, we think, that, in addition to showing the circumstance of the license plates on the car with the knowledge and consent of the defendants, it was incumbent on plaintiff to show, either that the car was on the business of defendants when the accident occurred or that Seibert at the time he was driving it was their agent or employee; particularly is this so when we consider the unusual time of night at which the car was being driven and that defendants' consent to the use of the plates was for demonstration or testing purposes. The circumstances that Lyda, the prospective purchaser, was one of defendants' employees and the driver his coemployee operating the car after usual working hours in pursuance of a request made by Lyda, are most material in determining Seibert's relation to appellants at the time of the accident. The court was in error in saying to the jury that his negligence fixed defendants with responsibility, provided they had permitted the use of their license plates on the car, and that it was not a question in the case whether the occupants of the car were on defendant's business or not. In Markle v. Perot, 273 Pa. 4, we determined that the liability of the owner of a motor vehicle, for the tortious act of the driver of his car, which caused injuries to a third person, rests either on the relation of master and servant or of principal and agent, between the owner and the driver. This rule was also announced in Farbo v. Caskey, 272 Pa. 573. In Treon v. Shipman, 275 Pa. 246, we said: "In order to fix liability

for an accident resulting from an automobile collision, it is necessary for plaintiff to show, not only that the car belonged to the defendant, but that it was engaged in and about his business at the time the injury occurred." These principles are applicable to cases brought against dealers in cars, where the dealer in permitting the use of his license plates has observed the law; in such case, the presence of his license plates on the car is not the determining factor in settling the question of liability.

As that part of the charge covered by the first assignment of error does not embody a correct statement of the law, in that it eliminated entirely, from the jury's consideration, the question whether the car was being operated on the business of the defendants, and took no account of the relations of Seibert to the defendants in the peculiar circumstances under which he was operating it, the first assignment of error must be sustained.

The judgment is reversed with a new venire.