Prezel et ux. *v.* Spencer, Appellant.

Argued April 22, 1930.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*David M. McCloskey,* and with him *Harry F. Moore,* for appellant, cited: Haring v. Connell, 244 Pa. 439; Orluske v. Nash Motors Company, 286 Pa. 173.

*Harry A. Jones,* and with him *C. J. Tannehill,* for appellee, cited: Holzheimer v. Lit Brothers, 262 Pa. 150; Talarico v. Baker Office Furniture Company, 298 Pa. 211.

OPINION BY CUNNINGHAM, J., July 10, 1930:

Plaintiffs, husband and wife, recovered separate verdicts against defendant in the respective sums of $1800 and $1500 for the personal injuries suffered by each, and damages to the husband's car, in an automobile accident; defendant's motions for a new trial and judgments n.o.v. were overruled and he now appeals from the judgments entered upon the verdicts. As the question involved at No. 139 is identical with that at No. 138 but one opinion will be filed.

Appellant, A. D. Spencer, is a dealer in Buick, Cadillac and LaSalle automobiles at Charleroi, Pa., under the trade name of Spencer Garage. For the year 1928 he obtained, under sections 501 and 502 of the Act of May 11, 1927, P. L. 886, 903, ten sets of

dealer's registration plates, including one marked "X-4944." Under the provisions of section 502, these plates could, in so far as the issues in this case are concerned, be lawfully used by him only on a motor vehicle owned and operated by him or his employes, and when it "is used (a) in the motor vehicle business of such ...... dealer; [or] (b) for the personal pleasure of such ...... dealer, or the members of his family, and is operated by such ........ dealer, or an immediate member of his family."

Among other employes of defendant was Cornell Wikan, employed as a general salesman. On the evening of April 18, 1928, Wikan drove from the garage of defendant a Buick roadster bearing the above mentioned dealer's plates numbered "X-4944." While driving along the state highway from Charleroi to Monongahela City, and having as his objective the residence of A. K. Coulson, four miles beyond Monongahela City, he met, on a curve, the car in which plaintiffs were riding and the collision which gave rise to this litigation occurred. The statement of claim averred, inter alia, that "the defendant, by his servant or agent, in the performance of his duties as such," negligently and carelessly operated the Buick roadster, thereby causing the injuries to plaintiffs. An affidavit of defense was filed denying the averment to the effect that at the time of the accident Wikan was engaged in the performance of his duties as the servant or agent of defendant.

The question involved on these appeals is raised by a single assignment of error challenging the correctness of an instruction in the charge relative to the presumption arising from the admitted fact of the presence of defendant's registration plates upon the Buick car at the time of the accident. In determining whether error was committed, the excerpt assigned must be read in the light of the proofs and in connection with the other portions of the charge dealing with

this branch of the case. On this issue, the plaintiffs' contention was that Wikan at the time of the accident was not only the general agent of the defendant, Spencer, but was engaged on his employer's business and acting within the scope of his employment; the defendant's contention, in which he was supported by Wikan, was that Wikan, without Spencer's knowledge, was using the car at the time upon the purely personal mission of making a social call upon the daughter of Mr. Coulson. Plaintiffs' theory was that the chief purpose of the trip was to interest Mr. Coulson in the purchase of a car and that the proposed social call was merely incidental thereto; in alleged support of their theory it was shown that he purchased a Buick car about a year later.

The title to the car Wikan was driving was in him but he had no owner's registration plates for it and used it, with Spencer's dealer's plates attached, for the purpose of interviewing prospective purchasers, giving demonstrations, and in the general business of the defendant. Spencer testified that all his salesmen owned their cars and that Wikan's instructions were to use his dealer's plates "when he was in the work of the garage," but that he knew Wikan "was using them for purposes outside of that," and that he "didn't pay any attention to how [Wikan] used [his] cars and licenses, or where he went with them." There was evidence from which a jury could reasonably find (notwithstanding contradictions by Wikan and Spencer) these additional facts: On the day after the accident when Wikan, in the presence of Spencer, was threatened by a state patrolman with arrest for operating a car without the owner's consent, Spencer said, "He was on business for me," and, when Spencer was asked whether he knew Wikan had his car out, he replied, "Yes, he was out on official business for me." Five days later Wikan signed, at the instance of an investigator for counsel for plantiffs, a statement of the cir-

cumstances of the accident, reading in part, ''I was driving a Buick roadster belonging to Spencer Garage and on Mr. Spencer's business,'' which statement was read by Spencer, who said it was correct and told Wikan to sign it.

After the accident Wikan returned to Charleroi, reported the incident to Spencer, obtained another car from the garage, also bearing dealer's registration plates, and continued his journey to the Coulson residence. In the introductory part of the charge the learned trial judge stated that the first material fact which plaintiffs must establish before there could be any recovery ''is the fact that, at the time of the collision. .. .... Wikan was...... the agent of the defendant, Spencer, and was...... engaged in the business of the defendant.. ..,.. and acting within the scope of his authority as the agent of the defendant.'' After illustrating, in a manner to which no exception was taken, the circumstances under which a principal would be liable for the acts of his agent and those under which there would be no liability, and after explaining fully the opposing contentions of the parties with respect to Wikan's mission and where the burden of proof lay, the court, in directing attention to the evidence relied upon by plaintiffs, used the following language—now assigned for error. ''In the first place they have offered evidence from which they claim they have shown that at the time this collision occurred, defendant's license plate which had been purchased for use in connection with his business was on the car being driven by Wikan. And then you have the testimony of Mr. Spencer to the effect that he knew that this car was being generally used by Wikan. The law does not presume that Mr. Spencer would permit his license plate to be used for an unlawful purpose, and it would presume that the general uses to which it was being put were within the law. The presumption or inference would therefore arise from the fact that the dealer's

license plate was on the car being driven by Wikan, that it was at the time being used for the purpose of the employer, Spencer; that is, that it was being used by Wikan in connection with his business and duty as a salesman for Mr. Spencer, and that he at the time was acting within the scope of his employment in the driving of this car at and immediately prior to the collision. This inference, however, is only a rebuttable inference. It is one that is capable of being rebutted. In other words, it is not conclusive; it is not a presumption of law, but merely a presumption of fact. From the proof of the fact that the plates were used, the jury may draw the inference and should draw the inference that it was being used for the purposes of the driver's employment and within the scope of his employment, in the absence of any other testimony.''

The trial judge then explained to the jury that as the presumption was a rebuttable one and as there was evidence on the part of the defendant tending to show that Wikan was not at the time acting as his agent and within the scope of his employment, the issue became ''a disputed question of fact to be determined by the jury from all the evidence in the case.'' The evidence on both sides of the issue was fully and fairly reviewed and the question of fact submitted to the jury with the instruction that, if they found that Wikan ''was not at the time making that trip in connection in any way with his employment, but was going out there wholly for the purpose of making a social call unconnected with his agency and unconnected with his employment with Mr. Spencer, then there could be no recovery in this case.''

We are not convinced by the earnest and able argument of counsel for defendant that the instruction complained of was erroneous. Their suggestion that a presumption to the effect that the car was being used for the personal pleasure of the dealer or the members of his family arose as readily as the presumption re-

ferred to by the trial judge, and that these presumptions neutralized each other, is without force. They had shown that the car was neither being used for the personal pleasure of the dealer nor operated by him or an immediate member of his family.

In Haring v. Connell, 244 Pa. 439, our Supreme Court had occasion to consider the presumption arising from the presence on a car of a dealer's registration plates issued under the Act of 1911. Under that act cars bearing such tags could not lawfully be used for any purpose other than "testing or demonstrating the vehicle to a prospective purchaser, or in removing the same from place to place for the purpose of sale." This language appears in the course of the opinion: "One of these [dealer's tags] was on the car which ran into the appellant, and, as it was issued upon the express condition stated, the presumption is that the appellees had complied with the act of assembly and that the tag was on a car operated by them, or by someone for them, for the purpose of demonstrating it to a prospective purchaser or in taking it to some place for the purpose of sale." See also Theil v. Wolfe, 77 Pa. Superior Ct. 312, and Herrington v. Hill, 60 Pa. Superior Ct. 202, and cases there cited.

The defense in this case was, in substance, that the tags shown to have been on the car were continuously used in a manner which amounted to a plain violation of the act under which they were obtained, but certainly there would be no presumption to that effect. Defendant's own testimony, to which we have already referred, shows that such illegal use was with his knowledge and consent.

It is suggested that the cases of Reed v. Bennett et al., 276 Pa. 107 (decided under the Motor Vehicle Act of 1919), and Orluske v. Nash Pittsburgh Motors Co., 286 Pa. 170, modify Haring v. Connell, supra. We find nothing in these cases inconsistent with the principle announced in the Haring case. In the Reed case the

owners of the car (for the sale of which negotiations were pending) and of the dealer's registration plates lawfully authorized one of their employes to use the plates upon the car while it was being tested; the court below instructed the jury that if they found the tags were on the car at the time the accident in that case occurred, with the knowledge and consent of the dealers, they were responsible for whatever happened in the driving of that machine, and that it did not make any difference whether the persons in charge of the machine were on the business of the defendants or not. The Supreme Court held this instruction to be erroneous because it was incumbent on the plaintiff in that case, in order that a recovery might be had, to show that the car was then being driven by an employe of the defendants, acting within the scope of his authority and upon their business. In the course of the opinion this significant language was used: "The legal situation is an entirely different one from that which would exist if a dealer should permit the use of his license plates on a motor vehicle not owned by him, or not operated by his employe, or for a purpose other than demonstrating it to a prospective purchaser or testing it or removing it from place to place. In any of these instances, the dealer would have violated the express mandate of the law, and responsibility under circumstances which can be imagined might flow to him from such violation."

Here defendant's admissions were to the effect that he unlawfully permitted the use of his dealer's plates upon a car of which he was not the owner and for purposes not connected with his business. In the Orluske case the Supreme Court declined, under the circumstances there present, to consider the question whether the mere use of a dealer's license tag raised a presumption that the car was used in the latter's business, because, in that case, the undisputed evidence showed that the automobile was in fact used by the driver with-

out authority and not pursuant to duties connected with his employment. Here, the fact that the driver, whose negligence the jury found caused the accident, was in the employ of the defendant was not disputed; the only controversy upon this feature of the case was whether at the time he was acting within the scope of his authority in furtherance of his employer's business. That, under the evidence here produced, was a question of fact for the jury and in our opinion was properly submitted to that tribunal. As we find no error in the portion of the charge complained of, the assignment must be overruled.

The judgments are severally affirmed.