Morgan et al. *v.* Heinel Motors, Inc., Appellant.

Argued January 6, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Richard A. Smith,* with him *J. Harry Wagner, Jr.,* for appellant.

*Robert M. Bernstein,* with him *Milford J. Meyer,* for appellees.

OPINION BY MR. JUSTICE LINN, March 21, 1938:

Plaintiffs, suing on behalf of themselves and their minor child to recover for injuries sustained by the child, obtained verdicts of $3,000 for the parents and $7,000 for the child. Motions for judgment n. o. v. and for a new trial were refused. In refusing the new trial motion, the learned court stated that the verdicts were excessive and gave plaintiffs the alternative of remitting all of the verdict over the sum of $131.43 in the case of the parents, and in the case of the child, the excess over $6,000, or of retrying the case. The plaintiffs elected to file the remittiturs. From the judgments entered on the verdicts so reduced, the defendant has appealed.

Miss Wenrick, who drove the car at the time of the injury, is not a defendant in this action, though it is said that a separate suit against her is still pending. The appellant did not, as the statute permits, make her an additional defendant. The evidence describing the circumstances in which she drove from the cartway to and on the sidewalk and injured the minor, need not be recited; it is sufficient to say that it amply supports the finding of negligence implied in the jury's verdict. Her

negligence would of course not support a verdict against the appellant unless there was some relation between the two rendering appellant liable for her conduct at the time. The statement of claim averred that "on 31st day of May, 1936, the defendant herein, by its agent, servant, or employee, did operate the motor vehicle or automobile involved in the accident hereinafter referred to." This averment was denied in the affidavit of defense. Whether *respondeat superior* applied was therefore perhaps the most important issue for trial.

An agreement of purchase and sale of a Dodge sedan for $902 was executed by Miss Wenrick and defendant dated May 23, 1936. Credits in cash and a turned-in car were allowed, leaving a balance of $290 due. Certified copies of the application dated May 29, 1936, made to the Commonwealth by Miss Wenrick and defendant, for certificate of title pursuant to which owner's registration plates (and for present purposes, we assume, a certificate of title) were issued to her, on June 1st, the day after plaintiff was injured, were offered in evidence. The car was placed in her custody on May 29th.

At the time of the injury the car bore dealer's registration plates issued to defendant, pursuant to the Vehicle Code, approved May 1, 1929, P. L. 905, 929, 75 PS section 1 et seq. Section 502, 75 PS section 132, provides: "Use of Manufacturer's, Jobber's and Dealer's Registration Plates Limited.—Registration plate or plates issued in the 'Dealer's Class' may be used on any motor vehicle, trailer, or semi-trailer, owned or in the possession of a manufacturer, jobber, or dealer, and operated by such manufacturer, jobber, or dealer, or the employee of such manufacturer, jobber, or dealer, when such motor vehicle, trailer, or semi-trailer is used (a) in the motor vehicle business of such manufacturer, jobber, or dealer, (b) for the personal pleasure of such manufacturer, jobber, or dealer, or the members of his family, when operated by such manufacturer, jobber, or dealer, or an immediate member of his family, (c) for teaching

a new operator how to operate a motor vehicle, if such new operator has procured a learner's permit, and for such new operator to take an examination for an operator's license, or (d) for testing motor vehicles, trailers, or semi-trailers in the possession of such manufacturer, jobber, or dealer, or (e) for demonstrating motor vehicles, trailers, or semi-trailers in the possession of such manufacturer, jobber, or dealer, and such vehicles may be operated by a prospective purchaser, when licensed as an operator or permittee, and when accompanied by the manufacturer, jobber, or dealer, or an employee of such manufacturer, jobber, or dealer."

Only part of Section 502 operates on the facts in the record. As defendant is a corporation engaged as jobber, or dealer, clause (a) applies; clause (b) does not apply to a corporation dealer; clause (c) does not apply because Miss Wenrick was, since 1929, a licensed driver and not a "new operator" within the clause; clause (d) may apply if she be regarded as having custody of the car for the purpose of "testing" it; clause (e) does not apply because Miss Wenrick was not accompanied by any employee of defendant.

Section 504 prohibits the operation of a motor vehicle "under any other registration plates than those of its own registration, except as provided in this act"; the exceptions are not important in disposing of this appeal. Section 508 provides that "No person shall give or lend . . . dealer's registration plate or plates to another."

As the Act provided that dealer's registration plates may be used "when such motor vehicle . . . is used (a) in the motor vehicle business of such . . . jobber, or dealer," or (d) is being "tested", the evidence that the car bore this dealer's plates, was prima facie proof that the car was, within section 502, "owned or in the possession of a . . . dealer and operated by such . . . dealer, or the employee of such . . . dealer" (a) "in the motor vehicle business of such . . .

dealer"* or (d) was being "tested". We should perhaps add that this would not have been the result if the defendant had been an individual jobber or dealer, instead of being a corporation, for, in that event, clause (b) might have been involved and have increased plaintiffs' burden of proof by requiring them to show, by evidence in addition to the use of the registration plates, that the car was used in and about the business of the defendant. Compare *Reed v. Bennett,* 276 Pa. 107, 119 A. 827, and *Orluske v. Nash Pittsburgh Motors Co.,* 286 Pa. 170, 133 A. 148 (dealing with an earlier statute), and *Warman v. Craig,* 321 Pa. 481, 184 A. 757, holding that a defendant cannot be charged with liability by showing merely that a pleasure car owned by a defendant was driven with his permission by his adult son.

In view of the use made at the trial of certain expressions in the opinion of *Conley v. Mervis,* 324 Pa. 577, 188 A. 350, it is necessary to say something about it. In that case the plaintiff sought to fix liability on the defendant by proof that the truck which injured the plaintiff bore dealer's license plates. The precise question for decision was whether the trial judge had ruled correctly in excluding defendant's proposed cross-examination of witnesses called by plaintiff and, if incorrectly,

---

* In Article XII entitled "ENFORCEMENT AND MISCELLANEOUS PROVISIONS", section 1209 contains this provision: "Registration Number Prima Facie Evidence.—In any proceeding for a violation of the provisions of this act, the registration plate displayed on such motor vehicle shall be prima facie evidence that the owner of such motor vehicle was then operating the same. If at any hearing or proceeding, the owner shall testify, under oath or affirmation, that he was not operating the said motor vehicle at the time of the alleged violation of this act, and shall submit himself to an examination as to who at that time was operating such motor vehicle, and reveal the name of the person, if known to him, or, if the information is made in a county other than that of his own residence, shall forward to the magistrate an affidavit setting forth these facts, then the prima facie evidence arising from the registration plate shall be overcome and removed and the burden of proof shifted."

whether the defendant, having subsequently put in the evidence in its case, was entitled to judgment on the whole record. We held that the evidence should have been received in cross-examination and, having been excluded, and the facts subsequently shown by defendant, they would be treated as if introduced in cross-examination as proposed. It was held that defendant was entitled to judgment. The rule applied was stated at page 583, that "The burden rested upon plaintiffs to prove that the truck driver was defendant's servant and that he was engaged in his master's business at the time of the accident." But earlier, in the course of the opinion, a general expression was used which it is urged must be regarded as properly defining, in all circumstances, the effect of section 502 as applied to dealer's registration plates, even if carried by a truck which a dealer proposes to sell. On page 580 it is said: "It is conceded that the ownership of *dealer's license plates* appearing on a motor vehicle raises a rebuttable presumption that the truck belonged to the owner of the tags, and was driven by his agent or servant in the scope of employment; and this, without more, would require the submission of these questions to the jury, even though rebutted by the uncontradicted oral testimony of the dealer's witnesses [citing cases]." The concession referred to the contentions of fact made in that case; it was not intended to state a general rule, as will appear by the cases cited: *Coates v. Commercial Credit Co.*, 310 Pa. 330, 165 A. 377; *Prezel v. Spencer*, 99 Pa. Super. Ct. 404.

In dealing with that general statement it is to be noted that section 502, clause (b), allows the use of dealer's license plates if a dealer or a member of his family operates the vehicle for the user's pleasure. In such case mere proof of ownership of the tags is not sufficient; if the car be operated by a member of the dealer's family for the purposes of the user and not for the purposes of the dealer, clause (b) places the same within

the well settled rule that in such circumstances the owner of the car is not liable: *Warman v. Craig,* 321 Pa. 481, 184 A. 757, and cases cited in that opinion.

In dealing with the present record, we have, then, plates that may be used by the defendant corporation on cars owned or possessed by it if used in its motor vehicle business, and we have the prohibition against lending such plates to another. If the transaction resulting in Miss Wenrick's use of defendant's dealer's registration plates can be given an innocent construction, instead of one involving a violation of law, it is desirable that it should be so treated: *Rau v. Wilkes–Barre & Eastern R. R. Co.,* 311 Pa. 510, 513, 167 A. 230.

From the testimony of Miss Wenrick, called by the defendant, we extract the following: "Q. When did you get possession of this car? A. May 29th, 1936. Q. Who turned the car over to you? A. It was a salesman in the department of Heinel Motors Company. Q. Do you know his name? A. No, I don't. Q. Who gave you the dealer's license tag to put on this car on May 29, 1936? A. The tags were already on the car. Q. Is it a fact, or is it not a fact, Miss Wenrick, that you did not, on May 29th, 1936, as yet have your owner's license for this car? A. I did not. Q. Is it not a fact that Elmer Heinel told you that you could use the dealer's license tag that you had on that car at the time the accident occurred—that you could use that tag on your car until you got your owner's tags from Harrisburg? . . . By the Court: Q. Did you have such a conversation with Mr. Heinel at any time? A. Yes. Q. When? A. May 23rd, when I first made a deposit. Q. Did he tell you at that time you could use the dealer's plates? A. Yes, until my tags came in. By Mr. Bernstein: Q. Then when you were running this car on May 31st, the time this accident occurred, you were running that car with this dealer's license plate in pursuance of the permission given you by Elmer Heinel to keep those plates on your car until you got your own license. . . . A. Yes, I was

running it on the permission of Heinel." The evidence as to use is short; she testified she had been "At my brother's" and was "Going home" at the time of the accident.

Mr. Elmer Heinel had executed the agreement of sale as secretary of defendant company. He denied that he stated to Miss Wenrick that she could use the dealer's registration plates and said he did not know who delivered the car to her on May 29th, because he was then absent from the city. Roland W. Heinel, sales manager for the defendant, testified that defendant's salesman Harris who "accepted the money when she took delivery of the car" was still in defendant's employ; Harris was not called as a witness. That Messrs. Heinel were called by plaintiffs, in rebuttal, is not conclusive, as defendant's argument suggests, that defendant had nothing to do with Miss Wenrick's use of a car bearing defendant's plates. Miss Wenrick's evidence that the salesman who turned the car over to her in the circumstances described by her was put in by defendant and was still for the jury.

The learned trial judge instructed the jury, inter alia, as follows: "Even if you find Mary Wenrick was negligent, that does not of course, of itself, justify any verdict against the defendant corporation in this case. You must find more, and the plaintiffs have the burden of proving more. The plaintiffs have the burden of proving that Mary Wenrick, the operator of this car and the only occupant of the car, was the agent or servant of the defendant corporation at the time of the accident, that the car was being used on the business of the defendant corporation and that the agent or servant was using the car within the scope of the servant's duties or the agent's authority." He then referred to section 502 and continued: "Now the law says that you, as a jury, may infer from the presence of those dealer's plates upon that car that the car was owned by the dealer, that it was being used by the servant or agent or employee of

the dealer, and that it was being used on the business of the dealer and within the scope of the authority of such servant or agent.

"In this case, ownership of the automobile is not important because, as you must realize, an agent or a servant may operate a car owned by some third person, not his employer or principal, but if the driver or the operator of the car is acting within the scope of his duties, and on the business of his employer or principal, then there is liability imposed on the employer or the principal. The ownership of an automobile by itself does not impose liability. It is, rather, the question of agency that is important in this case." He then dealt with the documentary evidence relied on by the defendant to rebut the prima facie case made out by the dealer's license plates, used as has been stated. He told the jury that if they accepted Miss Wenrick's testimony, it, with the other evidence, would justify a conclusion that "in an effort to induce Miss Wenrick to purchase the car, [defendant] did tell her on May 23, that if she would buy the car, she would be permitted to use the dealer's license plates belonging to the dealer in the operation of the car until she got her own owner's li-. cense plates to put on the car." When the charge is considered as a whole we find no reversible error.

The jury could have found from the evidence (and doubtless did) that, as Miss Wenrick testified, defendant's agent stated to her that until she received license plates, she would be permitted, as a condition of the sale, to use the car bearing the dealer's plates which were on it when defendant's agent received part payment on May 29th and allowed her to take the car. It had not yet been fully paid for. We think the transaction susceptible of lawful construction, and that, within section 502(a), defendant permitted her to use the plates as an employee of defendant dealer, for the time being, in its business, or for purposes of "testing" the car under clause (d).

Judgments affirmed.