## Lanteigne et ux. *v.* Smith, Appellant, et al.

Argued April 13, 1950. Before DREW, C. J., STERN, STEARNE, JONES and BELL, JJ.

*Peirce A. Hammond, Jr.,* with him *Myron W. Harris,* for appellant.

*C. William Freed,* with him *C. William Freed, Jr.,* for appellees.

OPINION BY MR. CHIEF JUSTICE DREW, June 26, 1950:

At 3 o'clock on the morning of August 7, 1947, James Duffy, defendant, negligently drove an automobile owned by Earl E. Smith, co-defendant, into the front of a restaurant owned by Renee Lanteigne and Madeline M., his wife, plaintiffs. To recover for the property damage and for personal injuries to the wife-plaintiff, this action in trespass was instituted and resulted in verdicts for

plaintiffs against both defendants. Motions for judgment n. o. v. and new trial by defendant Smith were dismissed and judgments were entered in the sum of $5,247.51 against defendants. Smith then filed this appeal, conceding Duffy's negligence, and raising as the sole question the sufficiency of the evidence to show that Duffy was his agent.

Smith owned an automobile sales agency known as "Royal Sales" in the City of Bethlehem. Duffy operated an automobile repair shop adjoining Smith's showroom and from time to time did repair work on cars owned by Smith. He also had an arrangement with Smith whereby Smith would pay him a commission on any automobiles he, Duffy, might sell. On the morning of the accident Duffy was driving an Oldsmobile owned by Smith and bearing a dealer's license plate No. A922S which had been issued to "Royal Sales". He was riding on the wrong side of State Highway Route 309, just north of the Borough of Quakertown, Bucks County, when he collided with a truck going in the opposite direction. Following the collision the car careened, out of control, into the front of plaintiffs' restaurant, known as "The Pines", causing personal injuries to the wife-plaintiff and extensive damage to the building.

Immediately following the accident Duffy told Lanteigne that he had been demonstrating the car for Smith and was returning home when the collision took place. The next day Smith visited plaintiffs and, according to their testimony, he verified Duffy's story. At the trial Smith denied making such statements and further denied that Duffy had authority to take the automobile out to demonstrate it. Duffy did not enter an appearance or testify at the trial.

The learned trial judge charged the jury that the presence of Smith's dealer's tags on the automobile raised a rebuttable presumption that Duffy was acting as Smith's agent at the time of the accident. It is that

portion of the charge to which Smith raises his most strenuous objection.

It is true that this Court has repeatedly laid down the rule that the presence of dealer's license plates on an automobile at the time of an accident raises a rebuttable presumption that the car was being driven by his servant acting within the scope of his employment: *Frew v. Barto,* 345 Pa. 217, 26 A. 2d 905; *Morgan v. Heinel Motors, Inc.,* 329 Pa. 360, 197 A. 920; *Conley v. Mervis,* 324 Pa. 577, 188 A. 350; *Coates v. Commercial Credit Co.,* 310 Pa. 330, 165 A. 377; *Haring v. Connell,* 244 Pa. 439, 90 A. 910. However, that presumption has never been an arbitrary one but arose because of the limited purposes for which dealer's tags may be used. As we said in *Coates v. Commercial Credit Co.,* supra, at 333: ". . . as the legislature has specified the occasions on which dealers' automobiles may legally be operated, it must be presumed that its prescribed rules are being complied with."

When the presumption of agency was first established in *Haring v. Connell,* supra, the permitted uses of cars containing dealer's tags were limited to a few essential business purposes.[1] Thereafter, §502 of The Vehicle Code of 1929 [2] expanded the use of dealer's tags to allow a member of the dealer's family to drive a car containing those tags for the personal pleasure of the driver. Under that Act, this Court, speaking through Mr. Justice LINN, stated in *Morgan v. Heinel Motors, Inc.,* supra, at 365: ". . . it is to be noted that section 502, clause (b), allows the use of dealer's license plates if a dealer or a member of his family operates the vehicle for the user's pleasure. In such case mere proof of ownership of the tags is

---

[1] Act of April 21, 1911, P. L. 74. That Act provided, inter alia, that "A dealer's tag . . . shall not be used for any other purposes than testing or demonstrating the vehicle to a prospective purchaser, or in removing the same from place to place for the purpose of sale."

[2] Act of May 1, 1929, P. L. 905.

not sufficient; if the car be operated by a member of the dealer's family for the purposes of the user and not for the purposes of the dealer, clause (b) places the same within the well settled rule that in such circumstances the owner of the car is not liable: Warman v. Craig, 321 Pa. 481, 184 A. 757, and cases cited in that opinion."

The Vehicle Code of 1929, §502, was amended by the Act of June 27, 1939, P. L. 1135, and now allows the use of such tags not only for the personal pleasure of the dealer's family but also for the pleasure of his employes. With that amendment the language of the *Morgan* case, quoted above, becomes equally applicable to cars driven by employes of the dealer. It can no longer be presumed that an employe driving an automobile with dealer's tags is acting within the scope of his employment since he might, with equal legality, be using the vehicle for his own personal pleasure. That being true, the trial court erred in permitting the jury to infer agency from the fact that Smith's dealer's tags were on the car.

Smith contends that with the presumption removed there was no evidence of agency and he is, therefore, entitled to a judgment n. o. v. With that contention we cannot agree. It was incumbent on plaintiffs to prove that the driver, Duffy, was engaged in the business of his employer, Smith, at the time of the accident and that he was acting within the scope of his authority: *Warman v. Craig,* 321 Pa. 481, 184 A. 757; *Orluske v. Nash Pbg. Motors Co.,* 286 Pa. 170, 133 A. 148; *Reed v. Bennett,* 276 Pa. 107, 119 A. 827. This burden was met when Lanteigne testified that Smith told him that Duffy had been demonstrating the car in an effort to sell it for Smith and was returning home when the accident occurred. It is true that Smith denied making such statements but that denial merely raised an issue of credibility which was properly left to the jury: *Nanty-Glo Boro. v. Amer. Surety Co.,* 309 Pa. 236, 163 A. 523.

The other errors assigned need not be detailed here. They were fully and correctly disposed of by the court below in its opinion. However, the error in the charge on the presumption arising from the presence of dealer's plates on the car requires that a new trial be granted to Smith. It must be noted here that Duffy's negligence is conceded. Therefore, the sole issue to be determined at the retrial is whether Duffy was acting as Smith's agent at the time of the accident. If that issue be resolved in plaintiff's favor, then judgment must be entered against Smith in the same amount as the judgment now standing against Duffy.

The judgments are reversed and the record is remitted to the court below for a new trial in conformity with this opinion.

---

DISSENTING OPINION BY MR. JUSTICE JONES:

The majority opinion holds in effect that the 1939 amendment [1] of The Vehicle Code, extending the permissible use of an automobile bearing a dealer's license plates to *regular* employes of the dealer, operated to destroy the presumption formerly obtaining that the operator of an automobile so equipped was the agent of the dealer and acting in furtherance of the dealer's business. The majority opinion assigns as authority for its ruling a dictum of an earlier case (*Morgan v. Heinel Motors, Inc.*, 329 Pa. 360, 197 A. 920). That case was actually decided a year *before* the enactment of the 1939 amendment and affirmed judgments for the plaintiffs entered on a verdict returned under specific instructions to the jury that they could infer from the presence of dealer's license plates on the automobile involved in that accident that it was owned by the dealer and was being operated at the time by the dealer's servant, agent or employe on the dealer's business.

---

[1] Section 6 of the Act of June 27, 1939, P. L. 1135.

The conception that the presumption has been legislatively destroyed, or even impaired, stems from a too slavish adherence to the *ratio legis* originally ascribed when the rule was first laid down in *Haring v. Connell,* 244 Pa. 439, 442-443, 90 A. 910, in *1914.* From the fact that dealer's plates were issued and accepted upon condition that they would ". . . not be used for any other purposes than testing or demonstrating the vehicle to a prospective purchaser, or in removing the same from place to place for the purpose of sale" (Act of April 21, 1911, P. L. 74), this court there held that the license plates (tag) were "prima facie evidence that, at the time of the collision, the [dealers], or someone acting under their authority, were operating the car, and the burden was shifted to them of showing that it was not so operated." While the statutory limitation on the use of dealer's plates was a valid and sufficient basis for the creation of the presumption, it was by no means the only justifiable reason for it. Cars equipped with dealer's plates, like regular business vehicles, are ordinarily used in the dealer's business.

Two years after *Haring v. Connell,* supra, to wit, in *1916,* and as a natural extension of the presumptive responsibility attaching to the essentially *business* use of the dealer's license plates, this court, in *Williams v. Ludwig Floral Co.,* 252 Pa. 140, 141-142, 97 A. 206, accorded, for the first time, a presumption that an automobile was being used on the owner's business and operated by his agent or employe within the scope of his authority because it was a *business* vehicle as evidenced by the legend or insignia emblazoned on its sides. There was no legislative restriction or limitation that the automobile be used on the owner's business to support the presumption. As is well known, it is entirely lawful for the owner of a business car to loan it to whomsoever he chooses for such person's own uses and pleasure. The rationale of the ruling, as later confirmed by Mr.

Justice FRAZER in *Sieber v. Russ Bros. Ice Cream Co.*, 276 Pa. 340, 344, 120 A. 272, derived from the fact that ". . . business trucks are primarily designed and are generally used for the business of the owner, and, in case of accident, it is not unreasonable to require the owner, whose name appears thereon, to prove the exceptional case where the use was, in fact, for other purposes not connected with defendant's business or for his benefit." The fairness of the rule was further well expressed in the *Sieber* case where it was said that from the "outward evidence of ownership or use to which [business vehicles] are being put" and the fact that the "information [in regard to the use] is peculiarly within the possession of defendant and if, as a matter of fact, the driver was using the car without authority and for purposes of his own, an undue burden is not cast on defendant to require him to show these facts after plaintiff has offered evidence of ownership of the car and its use apparently in connection with defendant's business." Indeed, if appropriate consideration be had for the relative facility of proof as between the parties, the merit of the rule is evident. Its essentiality to the proper protection of life and limb, as well as property, under modern automotive uses has been cogently observed: Wigmore on Evidence, 3rd Ed., Vol. IX, § 2510 (a).

But, wholly apart from the provisions of The Vehicle Code with respect to the use of dealer's license plates, the presumption of an operator's agency on the owner's business arising from the ordinary business use of a car equipped with such plates is as logical and reasonable as it is in the case of any other type of business vehicle. Dealer's plates imply *prima facie* just as strongly as does a business sign that the car is being used on the owner's business by his agent.

Even under the majority's view that "It can no longer be presumed that an employe driving an automobile with dealer's tags is acting within the scope of his

employment since he might, with equal legality, be using the vehicle for his own personal pleasure," the presumption was nonetheless admissible in the instant case. Duffy was not a *regular* employe of Smith and it is only a regular employe who may lawfully drive an employer's car bearing dealer's license plates on his own personal pleasure: see Act of 1939, supra. And, there is not a word of evidence in this case that Duffy was *a regular employe* of Smith. On the contrary, as the majority opinion discloses, he was an independent contractor who ". . . from time to time did repair work on cars owned by Smith . . . [and] had an arrangement with Smith whereby Smith would pay him a commission on any automobiles he, Duffy, might sell." The dictum in the *Heinel Motors* case, supra, upon which the majority rely, did no more than suggest the inapplicability of the presumption when a car with dealer's license plates is being driven by a member of his family at the time in question as permitted by The Vehicle Code of 1929. By a parity of reasoning, the amendment of 1939 could not be considered to have done anything further with respect to the presumption than render it inadmissible when an automobile equipped with dealer's license plates is being driven by a regular employe for his own pleasure.

Finally, if the trial judge's instructions to the jury with respect to the presumption to be drawn from the dealer's plates was error in any view, it was harmless. There was direct evidence in the case, by way of admissions of Smith against interest, sufficient to warrant the jury's finding of Duffy's temporary agency at the time of the accident. In that situation, I think it is particularly regrettable that the question respecting the validity of the presumption has been injected and that the case is now being sent back for another trial limited to the one issue of the driver's agency with the presumption attending the dealer's license plates on the car ex-

cluded from the jury's consideration. The damages to the plaintiff were undisputed; and the amount of the verdict is not questioned. In fact, under the majority opinion if the issue of agency be again resolved in the plaintiffs' favor, "then judgment must be entered against Smith in the same amount as the judgment now standing against Duffy [i.e., the judgment appealed from]."

I would affirm the judgment of the court below.

Mr. Justice ALLEN M. STEARNE joins in this dissent.