# Winlack *versus* Geist and Thomas.

1. The plea of "not guilty" in trover and conversion requires the plaintiff to prove his title. It is sufficient, however, for the plaintiff to show a prima facie title by purchase from the person in possession of it. His vendor's title need not be proved until it is attacked.

2. A., the tenant of timber land belonging to B., cut timber growing both on B.'s land and on adjoining properties, and sold the same to C. B. replevied the timber, obtained possession of it and converted it to his own use. C. brought trover against B. to recover the value of the timber replevied.

   *Held,* that the presumption of law was that A. had a right to cut the timber growing on the adjoining properties and sell the same to the plaintiff.

3. The possession of personal property is evidence of its ownership.

   *Semble,* that the presumption of ownership is not quite so strong when the property consists of timber cut from the land of another than the plaintiff's vendor.

4. The rule applicable in the case of confusion of goods which transfers the title to the whole to the one who is innocent of the intermixture, is grounded upon the impossibility of distinguishing the intermixed goods. If the goods may be distinguished the transfer of title does not take place.

October 9th, 1884.    Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Jefferson county :* Of October Term, 1884, No. 102.

This was an action of trover and conversion, by J. C. Geist and W. D. Thomas against R. S. Winlack to recover the value of a raft of square timber claimed by the plaintiffs as their property and taken and converted by the defendant to his own use. Plea, not guilty.

On the trial, before KNOX, P. J., the facts appeared as follows: Jane Abarrah upon February 23d, 1865, by articles of agreement, sold fifty acres of land in Heath township to William J. Winlack and Jacob Sheasley, and after several mesne conveyances the title was vested in R. S. Winlack, the defendant, on April 3d, 1880. During several years previous to

January 28th, 1880, one William Armstrong, a tenant of Winlack, lived on this tract, and on said January 28th, 1880, he agreed to sell to Thomas and Geist, the plaintiffs, and take out on the land certain oak, pine and cucumber timber. This was cut, taken to the Clarion river and there rafted in; some portion of it, how much the evidence did not precisely show, was taken from adjoining properties, belonging to Ewing and Wallace. The timber was rafted together indiscriminately and the portions taken from the several tracts were not distinguished. On April 3d, 1880, the defendant Winlack replevied the raft, and no claim property bond being given, recovered possession of the same and sold it. The plaintiffs then brought this suit to recover the value of the timber replevied.

The defendant requested the court to charge, inter alia, as follows:

4. That if the plaintiff wilfully intermixed his timber with that of the defendant, in such a manner that it was impossible to distinguish it from that of the defendant, all of the timber thus intermixed would belong to the defendant.

Answer. "You will take notice to the word 'impossible.' If you find the facts to be as stated in that point, we answer it in the affirmative, and we explain it to you in this way: If I wrongfully take away from my neighbor what belongs to him of such a nature that I can create confusion of goods, and I go and mix it with other goods that are mine in such a way that my neighbor can not distinguish his goods, or ascertain which are his or which are mine, he can seize the whole. How is that with timber? Suppose a man goes to the creek and sees a raft, and it is necessary that he should distinguish between the sticks that were cut from two different tracts: By inquiry could he not ascertain which was which from parties who hauled it? Now I apply the word 'impossible.' Could he ascertain that? It is his duty to, and he must, do what he can to ascertain it. Apply the word 'impossible.' If it was impossible for him to do it, the result stated in the point would follow. If by reasonable inquiry he could inform himself and separate the timber he would be bound to separate it." (Fourth assignment of error.)

The court further charged the jury as follows:

"So far as the Ewing and the Wallace tracts are concerned, where a man is in the peaceable and rightful possession—by rightful possession we mean this: If I am engaged in the timbering or in buying, and a man comes to me and says, I want to put you in a raft of timber, and I buy it believing it is all correct, and he puts the timber in and I pay him for it, the contract being a fair and legitimate one, and no fraudu-

lent arrangement entered into between us, and I am in the possession of that timber—if the party who sold it to me was a wrong-doer, no one but the actual owner of the timber could follow it and reclaim it from me, and the presumption would be, in the absence of proof, that it was rightfully taken and that I was in the rightful possession. But every presumption could be rebutted by facts. Now, allowing the presumption to be that Armstrong had a right to cut on the Wallace and the Ewing tracts and deliver the timber they say he did deliver from those two tracts, was there any evidence in this case to rebut that presumption?

"How much of the timber was cut on the fifty acres? Was it all cut on the fifty acres? Was a part of it cut on the Wallace tract? and was a part of it cut on the Ewing tract? How much was cut on those two tracts? Apply the instructions we have given you in reference to the presumption that when a man does an act he does it rightfully, not wrongfully. We are not presumed to commit crimes, or even do wrongful acts, but they must offer evidence to show that we do. That is to say, that William Armstrong had a right to cut timber over the Ewing and Wallace tracts and sell to these men, the plaintiffs, in the absence of proof to the contrary.

"Settle the question as to whether the timber all came off the fifty acre piece, or whether a part of it came from the Wallace and the Ewing tracts. If you find the latter to be the case, find this: What was that part which came off of the Ewing and the Wallace tracts worth at Armstong's Landing? Whatever it was worth at Armstong's Landing, that should be your verdict for the plaintiffs. But if you find that the fifty acres did not belong to R. S. Winlack at the date of the cutting and that the title was not in him, but that the legal possession was in Armstrong, or that Armstrong had the right of possession and was holding it there, and had the right to cut the timber, then, of course, you will have to add that to the timber which was cut on the Wallace and the Ewing tracts." (First, second and third assignments of error.)

Verdict for the plaintiffs for $252.39 and judgment thereon, whereupon the defendant took this writ assigning for error, inter alia, the answer of the court to his fourth point and the above portions of the general charge.

*W. P. Jenks* (with whom were *Conrad* and *Mundorff*), for the plaintiff in error.

*Jenks* (with whom was *Clark*), for the defendants in error.

Mr. Justice GREEN delivered the opinion of the court, October 27, 1884.

We are not able to say there was any error in the instructions given to the jury on the subject of the plaintiff's title. The only complaint that is made relates rather to the title of the plaintiffs' vendor than to that of the plaintiffs, except in its derivative character. The action is trover, and the plea was "not guilty," which of course required the plaintiffs to prove their title. This they did by showing purchase from another who had and delivered possession of the property, a timber raft, to the plaintiffs.

It appeared by the testimony that a portion of the timber was cut upon lands belonging to persons other than the vendor, and the defendant complains that the court permitted a recovery without requiring the plaintiffs to prove affirmatively, not only the title of the plaintiffs by purchase from their vendor, but also the full title of the vendor. It was proved that the vendor of the plaintiffs had cut and delivered the timber; there was no evidence showing that the persons upon whose lands the timber was cut, made any objection to the cutting, or any claim to the timber after it was cut, and the question was, what was the presumption in the absence of evidence. The learned judge of the court below said that the presumption was that the cutting was rightfully done and not wrongfully. We do not think this was error. It did not at all conflict with the right of the defendant to show title in another than the plaintiffs. But he did not choose, or did not attempt, to do this, and hence there was nothing in the case on this branch of the subject, except the presumptions that were applicable.

Of course there could not be a presumption of trespass, of wrong-doing. On the contrary, the mere fact of cutting without objection or adverse claim by the owners of the land, after several years had elapsed, was some evidence in addition to the natural presumption that persons act rightfully rather than wrongfully, in support of the vendor's title. If such a presumption may not be made in such circumstances, it would follow that there could be no recovery, which means practically that a presumption of wrong-doing must be made, and thus what might be a perfectly good title, against all the world, be lost in favor of one who had no pretence of title. The plaintiffs proved a perfect *prima facie* title by showing a purchase and payment for personal property from the person in possession of it. In all ordinary cases this is sufficient, because, as a rule the possession of personal property is evidence of its ownership. We think this is all that is required in actions of trover, unless the plaintiffs' title is directly challenged by the defence. We find the rule thus stated in 2 Troub. & Haly's Practice, § 1563: "So possession with

assertion of title, or even possession alone, such, for instance, as the finder of a chattel has, gives the possessor such a property as will enable him to maintain this action against a wrong-doer, for possession is *prima facie* evidence of property; but as the action is founded on property, and not merely on possession, it is still competent for the defendant to show a paramount title in a third person." Undoubtedly in any ordinary case of trover, where the subject of the action is a specific chattel, if the plaintiff proves that he bought and paid for it from one having it in possession, he has made out a *prima facie* case and one upon which he can recover, unless there is evidence impeaching his title. Perhaps the presumption is not quite so strong where the property consists of timber cut from land owned by another than the plaintiff's vendor. But we can not say there must be, in such a case, a presumption that the cutting was done without right. On the contrary, we think with the learned court below, that when a man does an act, the presumption, in the absence of evidence otherwise is, that he acted rightfully and not wrongfully. This does the defendant no harm. He is perfectly at liberty to disprove the presumption, and show by any sufficient testimony that it does not apply in the given case. Nor do we see any error in the answer to the defendants' fourth point. It is only the impossibility of distinguishing goods intermixed with others, that transfers the title to the whole, to the one who is innocent of the intermixture. But if they *may* be distinguished, the transfer of title does not take place, and of course whoever asserts such a title must prove it. The court said nothing more than this.

Judgment affirmed.