RABAUT *v.* FORD MOTOR SALES CO.

1. AUTOMOBILES—POSSESSION—OWNERSHIP—MASTER AND SERVANT.
    Employer of chauffeur who was driving car which struck and injured plaintiff, a pedestrian, was not owner of car within meaning of motor vehicle registration law where he had possession of the car for but four or five days on loan from garage where his own was being repaired but his liability, if any, depends upon principles arising out of the relationship of master and servant (1 Comp. Laws 1929, §§ 4632 [c], 4648).

2. SAME—MASTER AND SERVANT—CHAUFFEUR'S PERSONAL USE OF CAR.
    If chauffeur was driving car, loaned for use of employer while latter's car was being repaired, on a mission solely personal to the chauffeur and disconnected from his employer's business at time plaintiff pedestrian received accidental injuries, such

act would be outside the scope of chauffeur's employment and no responsibility could be placed upon employer.

3. SAME—PRESUMPTION AS TO USE OF CAR.

Fact that car was loaned for use of employer, so used by him and driven by his chauffeur who had been employed for purpose of driving a car, *held*, sufficient to raise presumption car was being operated by chauffeur in the course of his employment and while engaged in the business of his master at time of accident to plaintiff pedestrian and such a presumption suffices to establish a *prima facie* case for the plaintiff.

4. SAME—PRESUMPTIONS AS TO USE OF CAR—REBUTTAL.

Presumption, arising from fact that car was loaned for employer's use and was being driven by his chauffeur at time it injured plaintiff pedestrian, that car was being used in course of his employment and while engaged in the business of the master, could not be weighed against the evidence but disappears when rebutted by direct, positive, credible evidence to the contrary.

5. MASTER AND SERVANT—CHAUFFEUR—DISOBEDIENCE—LIABILITY OF MASTER.

Chauffeur's employer woud be liable for injuries to plaintiff if chauffeur was engaged in master's business at time accident occurred even though chauffeur was acting contrary to his master's express instructions.

6. AUTOMOBILES—MASTER AND SERVANT—PRESUMPTIONS—EVIDENCE.

Evidence that chauffeur had not been sent on mission by employer which would take him to scene of accident with plaintiff, that chauffeur had been instructed never to use employer's car on matters personal to chauffeur, and that accident happened five or six blocks in direction from employer's house opposite from that which would be normally taken in going to employer's office *held*, of a negative and circumstantial nature, and although bearing upon question of whether or not car was being used incident to employer's or chauffeur's personal business, was not of such a direct, positive and credible nature as to establish as a matter of law that chauffeur was acting without the scope of his employment.

7. SAME—CHAUFFEUR'S USE OF CAR—EMPLOYER'S BUSINESS—QUESTION FOR JURY.

In action by pedestrian for injuries received when chauffeur was driving car, loaned for employer's use, at a place five or six

blocks from latter's residence in opposite direction from that of office, question of whether car was being operated on business of employer *held*, for jury.

8. SAME—PRESUMPTION OF OWNER'S CONSENT TO USE.

   It is presumed that car driven by chauffeur, which had been loaned by owner for use of employer while latter's car was being repaired, was being driven with the knowledge and consent of the owner but such consent did not extend to uses other than those relating to the business of the employer.

9. SAME—OWNER'S CONSENT TO USE OF CAR LOANED FOR USE OF CHAUFFEUR'S EMPLOYER—QUESTION FOR JURY.

   In action by pedestrian against automobile sales company, its customer and latter's chauffeur for injuries sustained while last-named defendant was driving the car which had been loaned for use of customer while his own car was being repaired, question of whether car was being used for business of customer, at time of accident, so as to hold owner *held*, for jury (1 Comp. Laws 1929, § 4648).

Appeal from Wayne; Campbell (Allan), J. Submitted April 13, 1938. (Docket No. 96, Calendar No. 40,008.) Decided June 8, 1938.

Case by Charles Rabaut against Ford Motor Sales Company, a corporation, Dr. Leo Breisacher and William Venable for personal injuries sustained when struck by an automobile while crossing at a street intersection. Verdict and judgment for plaintiff. Defendants Ford Motor Sales Company and Breisacher appeal. Affirmed.

*James M. Cleary* and *Robert T. Adams,* for plaintiff.

*Vandeveer, Vandeveer & Haggerty,* for defendant Ford Motor Sales Company.

*Colby, Berns & Costello,* for defendant Breisacher.

Chandler, J. Defendant Breisacher is a physician, practicing his profession in the city of Detroit and maintaining an office in the David Whitney building in the downtown section of said city. For a period of some five or six years prior to August 27, 1936, the date of the accident in question, he had employed the defendant William Venable as his chauffeur and houseman.

On August 24, 1936, the chauffeur took Dr. Breisacher's Lincoln Zephyr automobile to the Ford Motor Sales Company for the purpose of having some repairs made thereon. The required repairs were of such a nature that they could not be performed immediately and thereupon the Ford Motor Sales Company loaned a Ford automobile for the use of the doctor until the repairs were completed. According to the testimony of the manager of the sales company under whose authority the car was loaned, the exchange followed a telephone conversation between himself and the doctor relative to the repairs to be made on the Lincoln, it being agreed that the doctor should use the loaned car in the interim. According to Dr. Breisacher, the car was loaned to the chauffeur Venable without his knowledge and he was unaware of the exchange of cars until Venable appeared with the Ford. Regardless of this conflict in the testimony, the Ford was used from thenceforth until August 28 or 29, 1936, by the doctor in his business.

On August 27, 1936, the chauffeur delivered his employer in the Ford to his office in the David Whitney building, who at that time gave Venable instructions to return for him at 5:00 o'clock in the afternoon as he desired to drive to the country and visit a farm owned by him. Venable did not appear at the appointed time for at about that hour, while operat-

ing the Ford car in a negligent manner, he struck the plaintiff who was then crossing the street at the corner of Kercheval and Belvidere avenues, a point some five or six blocks east of Dr. Breisacher's residence on Seminole avenue. A witness testified that immediately after the accident the chauffeur stated he was then on his way downtown.

The David Whitney building is located in a westerly direction from the doctor's residence on Seminole avenue and according to the testimony the usual and shortest route taken in driving from the residence to the office was from the house to Kercheval, thence west on Kercheval to downtown Detroit.

The chauffeur, according to Dr. Breisacher, had been sent on no mission which would take him east of Seminole avenue to the point where the accident occurred, and the only thing that he had been instructed to do was to drive to the David Whitney building at the stated hour. He had been instructed never to use the doctor's car on any occasion pertaining to his own business. As chauffeur, it was his duty to keep the car washed, greased, and filled with gas, the latter usually being purchased at the intersection of Kercheval and Parker, east of Seminole. He was to keep the car in good running condition. The doctor, at one point in his testimony, stated that the chauffeur made minor adjustments upon the car, but at another point contradicted this testimony.

Defendants' motions for a directed verdict were denied and following verdict for plaintiff a motion for a new trial was likewise denied. Defendants Dr. Breisacher and Ford Motor Sales Company take this appeal.

Dr. Breisacher, having had possession of the borrowed Ford for a period not to exceed four or five

days, could not be considered as "owner" thereof within the statutory definition of the term. 1 Comp. Laws 1929, § 4632, subd. (c) (Stat. Ann. § 9.1431, subd. [c]). His liability, therefore, if any, cannot be predicated upon 1 Comp. Laws 1929, § 4648 (Stat. Ann. § 9.1446), but must necessarily rest upon the legal principles arising out of the relationship of master and servant. *Brinkman* v. *Zuckerman,* 192 Mich. 624. It is claimed that no liability exists for the reason that the chauffeur was acting without the scope of his employment at the time the accident occurred.

If the car was at that time being driven on a mission solely personal to the chauffeur and disconnected from his master's business, the act would be outside the scope of his employment and no responsibility for the accident could be placed upon the doctor. *Brinkman* v. *Zuckerman, supra.* However, we do have the established facts that the car involved was loaned for the use of the doctor and so used by him. This, together with the additional proof that the machine was being driven by his servant employed for that purpose, we believe, was sufficient to raise a presumption that at the time and place of the accident, the car was being operated by Venable in the course of his employment and while engaged in the business of his master. See *Burns* v. *Michigan Paint Co.,* 152 Mich. 613 (16 L. R. A. [N. S.] 816); *Hatter* v. *Dodge Brothers,* 202 Mich. 97. See, also, annotations on this question generally in 42 A. L. R. 898; 74 A. L. R. 951; 96 A. L. R. 634. Such a presumption suffices to establish a *prima facie* case for plaintiff. However, it cannot be weighed against the evidence, but disappears when rebutted by direct, positive, credible evidence to the contrary. *Depue* v. *Schwarz,* 222 Mich. 308; *Noonan* v. *Volek,* 246 Mich.

377; *Wehling* v. *Linder,* 248 Mich. 241; *Weaver* v. *Motor Transit Management Co.,* 252 Mich. 64; *Sheathelm* v. *Consumers Power Co.,* 280 Mich. 106; *Christiansen* v. *Hilber,* 282 Mich. 403.

Thus the question is presented as to whether sufficient evidence is to be found in the record to rebut the presumption which has arisen by reason of the facts established. As opposed thereto, we have the testimony of Dr. Breisacher, an interested witness, that Venable had been sent on no mission which would take him to the point where the accident happened and that he had been instructed never to use his car on personal matters. This testimony was some evidence bearing upon the ultimate question of fact which still remained to be ascertained: Was Venable engaged in his master's business at the time the plaintiff was injured? If he was, liability attached to Dr. Breisacher even though he was acting contrary to his master's express instructions. *Loux* v. *Harris,* 226 Mich. 315. The mere fact that the accident happened at a point five or six blocks east of the doctor's residence and in a direction opposite that which would be normally taken in going to the office must be placed in the same category. The evidence mentioned, largely of a negative and circumstantial nature, although bearing upon the question sought to be answered and permitting inferences contrary to the presumption in plaintiff's favor, was not of such a direct, positive and credible nature as to establish that Venable was acting without the scope of his employment and permit us to say as a matter of law that the presumption disappeared.

The only person who could have given such direct and positive testimony pertaining to the purpose for which the car was being driven was the chauffeur. Although represented at the trial, he was not pro-

duced as a witness and all interested parties denied. knowledge as to his whereabouts, including his own attorney. As far as the record reveals, the only effort made to secure his presence was made by plaintiff who had obtained a subpœna which had not been served.

We hold, therefore, that the question as to whether Venable was operating the machine at the time and place in question on business of his master was properly left to the determination of the jury.

We turn to the question of the liability of the Ford Motor Sales Company. The statute, in part, provides:

"The owner of a motor vehicle shall be liable for any injury occasioned by the negligent operation of such motor vehicle whether such negligence consists of a violation of the provisions of the statutes of the State or in the failure to observe such ordinary care in such operation as the rules of the common law require. The owner shall not be liable, however, unless said motor vehicle is being driven with his or her express or implied consent or knowledge." (1 Comp. Laws 1929, § 4648 [Stat. Ann. § 9.1446].)

It is presumed that the car was being driven with the knowledge and consent of the owner. *Hatter* v. *Dodge Brothers, supra; City of St. Joseph, for use and benefit of Fidelity Casualty Co.,* v. *Grantham Motor Sales,* 269 Mich. 260. It is apparent, however, that the consent did not extend to uses other than those relating to the business of Dr. Breisacher. In view, of what has been said, it became a question of fact for the jury as to whether the car was being so used at the time in question.

Judgment affirmed, with costs to appellee.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, POTTER, NORTH, and MCALLISTER, JJ., concurred.