Freshkorn *v.* Marietta (et al., Appellant).

Freshkorn *v.* Marietta (et al., Appellant).

Wilson *v.* Marietta (et al., Appellant).

Argued October 5, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*J. Roy Dickie,* of *Dickie, Robinson & McCamey,* with him *Wilson & Salmon,* for appellant.

*Leonard L. Ewing,* of *Reed & Ewing,* with him *Lawrence M. Sebring,* for appellees.

OPINION BY MR. JUSTICE STERN, November 23, 1942:

Paul Marietta, driving an automobile belonging to Joseph Fash, struck another car and injured its occupants. In the litigation which ensued Fash was absolved from liability, but three judgments were recovered by plaintiffs against Marietta and writs of attachment execution issued thereon against Pennsylvania Threshermen and Farmers' Mutual Casualty Insurance Company. That company had executed a policy of accident liability insurance in favor of Fash containing an ex-

tended coverage clause which made the insurance available "to any person or persons while riding in or legally operating" the automobile, "and to any person . . . legally responsible for the operation thereof, provided such use and operation thereof is lawful and with the permission of the named Assured . . ." Interrogatories and answers having been filed, a jury rendered verdicts for plaintiffs against the garnishee and the latter appeals from the refusal of the court below to enter judgments in its favor n. o. v.

All the testimony in the case was presented by witnesses called by plaintiffs. Admittedly Marietta was not the agent of Fash or on his business at the time of the accident. One Harry Davis, meeting Marietta in Rochester, told him that he had to go to his home in Freedom (some 2½ miles distant), and Marietta said he would take him there. The only testimony in regard to the permission given by Fash for the use of his car was that of Marietta as follows: Q. "Tell us the circumstances under which you got the keys?" A. "I asked Mr. Fash to take me to Freedom and he told me . . . that he had some business to transact in Rochester, then in Beaver Falls, later on, and he wouldn't be able to take me up, because he had business to attend to in Rochester. He says, 'Here is the keys; you can have the car.'" . . . Q. "In the course of that conversation, when the keys were delivered to you, was there anything said by either you or him about going to any place but to Freedom?" A. "No." After receiving the keys Marietta drove Davis to the latter's home in Freedom, left him there, and then drove on to Ambridge, which is about 7½ miles beyond Freedom. On his return journey, and when within a distance of somewhat over two miles from Freedom (nearly five miles from Rochester), the accident occurred.

The court left it to the jury to determine the extent of the permission which Fash gave to Marietta for the use of the car, that is to say, whether it was limited or

unlimited and, if limited, whether it was substantially exceeded by Marietta. In this we think the learned trial judge erred. The conversation between Fash and Marietta, whether considered by itself or in the light of the surrounding circumstances, was wholly unambiguous and so clearly expressed the intention and meaning of the parties that there was no necessity for a fact-finding tribunal to interpret it. Marietta's application was for transportation to Freedom, and the permission given can be viewed only as being responsive to his request and limited by it.

Nor is there any need for this court to enter again upon a discussion in regard to the proper construction of the word "permission" as used in the extended coverage clause of accident liability insurance policies. As stated in *Laroche v. Farm Bureau Mutual Automobile Insurance Co.,* 335 Pa. 478, 481, 482, 7 A. 2d 361, 362, 363, it is held in some states that if the original bailment was made with the consent of the insured the insurance company is liable even though the accident happens while the car is being used on an errand not embraced within the limits of the permission given, while other jurisdictions hold that there is no such liability if at the time of the accident the car is being driven at a time or place or for a purpose not authorized by the insured. It was pointed out that the latter was the prevailing view and the one favored by the trend of our own cases; accordingly it was there adopted, and that decision controls the present controversy (see also concurring opinion by Mr. Justice DREW in *Brower v. Employers' Liability Assurance Co., Ltd.,* 318 Pa. 440, 449, 450, 117 A. 826, 830). It is true, as stated in the *Laroche* case, 335 Pa. 482, 7 A. 2d 362, that "slight and inconsequential deviations will not annul the coverage of the omnibus clause," but here there was not a slight deviation but a new journey wholly independent from, and additional to, that for which permission was granted, a journey which, after Freedom had been reached, carried

on further for a distance of 7½ miles and involved there-fore a round trip of some 15 miles more than the five-mile trip for which the car had been loaned. Nor is it of any importance that the accident happened on the re-turn from Ambridge to Freedom rather than on the out-ward journey: *Martin v. Lipschitz*, 299 Pa. 211, 216, 217, 149 A. 168, 169, 170; *Gittelman v. Hoover Co.*, 337 Pa. 242, 245, 10 A. 2d 411, 412.

The court should have instructed the jury that, even giving to plaintiffs the benefit of the most liberal con-struction that could reasonably be placed upon the con-versation between Fash and Marietta, the car was not being operated at the time of the accident in accordance with the permission given by the insured, and therefore the insurance company was not liable on its policy.

Judgments reversed and here entered for the garni-shee.