GEORGE W. ANDERSON, appellant, v. HARLAN LEHNER et al., appellees.

No. 48007.

(Reported in 52 N.W.2d 513)

APRIL 1, 1952.

REHEARING DENIED JUNE 13, 1952.

John D. Randall and Richard F. Nazette, both of Cedar Rapids, for appellant.

Barnes, Wadsworth, Elderkin & Locher, of Cedar Rapids, for appellees.

MULRONEY, J.—Plaintiff sued Vernon Lehner and his son Harlan Lehner for damages sustained in an automobile collision. The petition alleged Vernon Lehner owned the car which Harlan was driving with his father's permission at the time it collided with plaintiff's car. The defendants both testified the owner had not consented to Harlan's use of the car, and at the close of all of the evidence the trial court directed the verdict for Vernon Lehner but submitted the case to the jury on the cause of action against the son Harlan and the counterclaim of Vernon against the plaintiff. The jury returned a verdict in favor of plaintiff on the counterclaim and against Harlan in the sum of $1983.06. There was no appeal from the judgment entered on this verdict but plaintiff appeals from the trial court's ruling directing the verdict in favor of defendant Vernon and the judgment entered thereon.

I. Section 321.493, Code, 1950, provides: "In all cases where damage is done by any car by reason of negligence of the driver, and driven with the consent of the owner, the owner of the car shall be liable for such damage."

Our last opinion where an automobile owner's liability for the negligent driving of the car by another was an important issue is Bridges v. Welzien, 231 Iowa 6, 8, 300 N.W. 659, 661. There we held the following statement of law was settled by our prior opinions:

"The plaintiff based her right of recovery solely upon section 5037.09 of the 1939 Code which provides that where damage is caused by the negligence of one driving the car, with the consent of its owner, the latter is liable. As this court has said

at different times, the defense of nonconsent is one which can be easily made, with little probability that it can be met with direct refutation. It is not necessary that the plaintiff adduce such direct testimony. When the ownership of the motor vehicle is admitted, as it is in this case, a prima facie case is made on this issue by the plaintiff, or as it is sometimes expressed an inference, or a presumption is created that the vehicle was being operated with the consent of the owner, and there must be sufficient showing to the contrary if the owner would avoid that finding. The plaintiff may aid this inference of law by direct evidence and by proof of facts and circumstances from which inferences may be drawn. As we have said, this inference is not a strong one, and it in no way changes the burden of proof. The owner may oppose the inference by such admissible testimony as may be available to him. But such testimony, though positive and direct, is not necessarily conclusive. It may be weakened or rebutted by facts and circumstances, or by its own inherent weakness or unreasonable character. The weight of the testimony and the credibility of the witnesses depend upon the facts and conditions as shown by the record in each case. This particular issue, as it comes before the courts, is one which the average jury is peculiarly well fitted to pass upon and arrive at a correct conclusion."

The foregoing will serve as a statement of the principles of law applicable here. When the issue of consent is tendered by pleading and proof of defendant car owner the issue is for the jury unless the defendant's evidence conclusively rebuts the inference of consent. As stated in Curry v. Bickley, 196 Iowa 827, 832, 195 N.W. 617, 619: "* * * the inference that a car is being operated at a given time by the owner, or with his consent, does not require that every case shall go to the jury where the undisputed and uncontroverted evidence establishes the facts so conclusively that the inference is overcome."

In the Bridges case we recognized there are cases where it is the duty of the trial court to direct the verdict and we cited about a dozen cases where we have held consent had not been established. There too we also cited about the same number of cases where we have held the issue of consent was for the jury. The real question in this case is whether the trial court

erred in his determination that the evidence conclusively established Vernon Lehner's nonconsent to his son's use of the car. We pass to the facts upon which this determination was made.

Harlan was seventeen years old at the time of the accident. He was living with his parents and attending high school in Cedar Rapids. The father owned the 1941 Chrysler involved in the accident and about 1:30 p.m. on the day of the accident Harlan's older brother brought the car home and left it in the driveway with the keys in it. Shortly thereafter Harlan took the car to drive to the home of a friend about five miles away. The accident occurred on this trip about 2:15 p.m. Harlan testified: "I did not have a driver's license but had a driver's permit and I had no permission to drive the car. * * * I had no permission whatsoever to drive the car." He went on to say that he had taken his father's car about five months before and his father had found out about it and had given him a good talking to and deprived him of privileges, such as going out nights and to shows for a couple of weeks. He said at that time his father told him "never to drive any of his cars again." But he also said: "After I got caught I took the car about three times and never got caught."

The transcript of the evidence in this case shows that the reference to the driver's permit in Harlan's testimony is an instruction permit under section 321.180, Code, 1950, authorizing a permittee to drive for a period of sixty days when "accompanied by a licensed operator or chauffeur * * * who is actually occupying a seat beside the driver." Harlan testified he had obtained this permit about a week or a week and a half before the accident and his father and mother signed so he could get it. He also said: "I first drove an automobile two years ago and was fifteen years old at the time." Harlan was alone at the time of the accident and the first thing he said after the crash was: "I sure am in trouble. I don't have any driver's license."

Vernon Lehner testified that the only time he knew of his son driving his car was the occasion about five months before the accident and he said: "I gave him a severe talking to and explained to him the reason why he should not drive it and what might happen, and that he had no license at that time, and that he should not drive a car until he was qualified, and all

those different things. I punished him, confined him to the house." He further testified this was the only occasion that he ever knew about when Harlan drove his car; that he never on any occasion gave his son permission to drive his car and did not know he had driven it until after the accident. He said he had signed for his son's instruction permit but had not taken him out to check on his driving.

There was some evidence from which the jury could find that when plaintiff saw Vernon Lehner during the evening of the day of the accident the latter said nothing to the effect that his son was driving without permission. Vernon testified he did not remember whether he told plaintiff that his son did not have permission to take the car.

The trial court made a careful analysis of the foregoing evidence. He determined there were no inconsistencies in defendant's evidence and it was not improbable. He considered the fact that the boy did not have a driver's license "a strong circumstance in favor of defendants upon this question because if a father, knowing that his son did not have a driver's license, authorized or permitted him to use his car, he would not only be doing something which was a public offense so far as he himself is concerned [section 321.219, Code, 1950] but he would be putting his son in the position of having violated the law too." The case of Ermann v. Kahn, 242 N. Y. S. 573, 229 App. Div. 693, is some support for the trial court's conclusion. See also annotation 5 A. L. R.2d 196.

We hold the trial court was correct in his determination that defendants' evidence of nonconsent overcame the presumption or inference that arose by reason of Vernon's ownership of the car. Defendant Vernon's evidence of lack of consent is uncontradicted by any direct evidence. Perhaps that is not so important because we have always recognized a plaintiff's difficulty in getting direct evidence to rebut an owner's testimony that he did not consent to another's use of his car. Here it is not rebutted by any facts or circumstances in the record. It is entirely consistent with usual and ordinary conduct. There is no testimony of Harlan's prior use of the car under circumstances which would indicate his father's knowledge of such use. There is nothing on which a jury could base an inference of consent.

There is nothing in this case that indicates the testimony of lack of consent was improbable. That a father should withhold consent to the driving of his car by his son who has no driver's license seems natural.

In the cases where we have held a jury question was presented when the owner and others testified to the lack of consent, without direct contradiction there have been facts and circumstances shown significant of consent, which tended in some respect to negative the testimony of the owner. Here there is nothing that rebuts the father's testimony. There is nothing but the original inference of consent. Were we to hold a jury question was presented by the record here it would mean the inference alone is sufficient to generate a jury question. The trial court was right in directing the verdict for the owner, for the only *evidence* in the record was the evidence of nonconsent. When such evidence stands uncontradicted and unrebutted by any facts or circumstances indicating consent there is nothing for the court to do but direct the verdict.

II. Plaintiff argues the owner's liability is established under what is called the "family purpose" doctrine. Section 321.493, Code, 1950, quoted in Division I, was adopted in 1919 by the Thirty-eighth General Assembly, chapter 275, section 12. Prior thereto the car owner's liability was on the theory of agency —that the driver was the agent or servant of the owner. It was during this period before the statute that we adopted the family purpose rule or, broadly stated, an automobile maintained by the owner for the general use of the family was regarded as being operated by the owner's agent when driven by a member of the family. Lemke v. Ady, Iowa, 159 N.W. 1011, 1012; Collinson v. Cutter, 186 Iowa 276, 170 N.W. 420; Napier v. Patterson, 198 Iowa 257, 196 N.W. 73. It is possible the family purpose rule exists in this state today for it seems to have been discussed in cases involving accidents occurring after the passage of the statute above-quoted. See Mooney v. Canier, 198 Iowa 251, 197 N.W. 625. But it would seem the rule would be supplanted by the statute fastening liability on the owner in all cases when the car was being driven with his consent. After all, even under the family purpose doctrine the plaintiff had the same burden to show the car was being driven with the owner's consent. In

one of our first cases allowing recovery under the family purpose doctrine, Lemke v. Ady, supra, decided in 1916, we said:

"Of course a father is not responsible for the torts of his minor children simply because of his relationship, and it must appear that the minor [who was driving his father's car] was engaged in some act for the benefit of the father or for some of the members of the family, *with his knowledge and consent.*" (Italics supplied.)

Actually the plaintiff's burden was lessened by the statute. Before the statute, the plaintiff, in order to fasten liability on the nondriving owner, had to show the owner's consent plus facts and circumstances justifying the inference that the driver was the owner's agent. The statute made the owner liable upon mere proof that he consented to the operation of his car by another. If it be thought the family purpose rule still has vitality in this state, it is not helpful to plaintiff. Under the rule and under the statute he had the burden to prove the car was being driven with the owner's consent. Under either he is aided by the original inference that the car was being driven with the owner's consent. This inference is overcome by direct evidence of lack of consent which is not improbable and is uncontradicted by other direct evidence or not rebutted in some manner by facts and circumstances from which consent could be inferred.

The trial court's ruling directing the verdict for defendant Vernon E. Lehner and the judgment entered thereon are affirmed. —Affirmed.

OLIVER, GARFIELD, BLISS, WENNERSTRUM, SMITH, MANTZ, and HAYS, JJ., concur.

THOMPSON, C. J., takes no part.