# Waters *v.* New Amsterdam Casualty Company, Appellant.

248

Argued October 3, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

reargument refused July 31, 1958.

*Stephen D. Marriner,* for appellant.

*Francis H. Patrono,* with him *Paul P. Posa* and *McCloskey, Patrono and McCloskey,* for appellees.

OPINION BY MR. JUSTICE COHEN, May 2, 1958:

In 1951 a collision between two automobiles resulted in the death of E. R. Yowell and the injury of his wife, Viola, who were in one of the vehicles. Ronald Koch was driving the other automobile which was owned by Edward Dreistadt. Mrs. Yowell and Clarence Waters, the administrator of the estate of her husband, brought actions for personal injuries and wrongful death against Koch, the driver, and Dreistadt, the owner. Dreistadt filed an answer denying that Koch had permission to drive his automobile and was discontinued as a party defendant. The actions resulted in verdicts for the plaintiffs against Koch alone on which judgments were entered. In order to satisfy the judgments plaintiffs brought this present suit against the New Amsterdam Casualty Company on its policy of

insurance issued to Dreistadt insuring "the named insured and also . . . any person while using the automobile . . . provided the actual use of the automobile is by the named insured or *with his permission*." (Emphasis supplied).

At the trial in the court below the plaintiffs introduced evidence to show that Dreistadt was the owner of the automobile, Koch the driver of the vehicle at the time of the accident, and that judgments against Koch were obtained in the earlier suit. The plaintiffs then rested. The defendant moved for a compulsory nonsuit contending that the plaintiffs failed to establish that "the actual use of the automobile was by the named insured or with his permission." The motion was denied by the trial judge who determined that a presumption of permissive use of the automobile arose from proof of Dreistadt's ownership of the vehicle. The defendant then introduced testimony to prove that Koch did not have permission to drive the automobile, but that he had only temporary custody of the vehicle in order to wax and polish it. At the close of the evidence the trial judge refused defendant's request for binding instructions and charged the jury that the plaintiffs were entitled to a presumption that Koch was operating the automobile at the time of the accident with the permission of the owner until and unless the defendant overcame this presumption by a preponderance of the evidence. The issue of whether defendant's evidence was sufficient to rebut this presumption was left with the jury. The jury returned verdicts in favor of the plaintiffs and, after defendant's motions for judgment n.o.v. and a new trial were refused by the court *en banc,* these appeals were taken.

A presumption is a judicial declaration that the establishment of one fact (The Basic Fact) requires the assumption of the existence of a second fact (The

Presumed Fact). One of the principal reasons for the creation of presumptions has been stated by Morgan and Maguire as follows: ". . . [Some] presumptions owe their origin and persistence to the judicial conviction that the party who has peculiar means of access to the evidence, or peculiar knowledge as to the existence or non-existence of the presumed fact should bear at least the burden of producing relevant evidence thereof ·sufficient to justify a finding in his favor. . . ."[1]

For this reason we early established in Pennsylvania the rule that proof of the ownership of a business vehicle involved in an accident, even though the owner's name does not appear thereon, raises a presumption that the operation of the automobile was for the owner's business purposes.[2] Whether at the time and place of an accident a commercial vehicle was actually being used for the owner's purposes or not, is usually peculiarly within the owner's knowledge, and consequently the burden of producing credible evidence upon the issue is properly put upon him. *Sieber v. Russ Bros. Ice Cream Co.*, 276 Pa. 340, 344, 120 Atl. 272 (1923); *Lanteigne v. Smith*, 365 Pa. 132, 139, 74 A. 2d 116 (1950) (dissenting opinion). Since the pre-

---

[1] Edmund M. Morgan and John McArthur Maguire, Cases and Materials on Evidence 78 (3rd ed. 1951). See also *Watkins v. Prudential Insurance Co.*, 315 Pa. 497, 504-505, 173 Atl. 644 (1934).

[2] *Kline v. Kachmar*, 360 Pa. 396, 401 n.1 61 A. 2d 825 (1948); *Kunkel v. Vogt*, 354 Pa. 279, 281, 47 A. 2d 195 (1946); *Dugan v. McGara's Inc.*, 344 Pa. 460, 462, 25 A. 2d 718 (1942); *Marach v. Kooistra*, 329 Pa. 324, 326-327, 198 Atl. 66 (1938); *Thatcher v. Pierce*, 281 Pa. 16, 18, 125 Atl. 302 (1924); *Hunter v. Rossi*, 172 Pa. Super. 301, 303-304, 93 A. 2d 912 (1953).

The overwhelming majority of jurisdictions also recognize that proof of ownership by the defendant of a vehicle driven by another creates a presumption that the operator was the agent of the owner. See 9 Wigmore §2510(a) (3rd ed. 1940) (cases extensively collected).

sumption is no more than a procedural technique designed for trial convenience to facilitate the production of proof by requiring the party with easier means of access thereto to come forward with evidence, its consequence may be stated as follows: If the defendant fails to introduce credible evidence negating agency, then the issue is decided in favor of the plaintiff as a matter of legal ruling. If the defendant does offer credible evidence to the contrary the presumption disappears as a rule of law and has no further effect upon the outcome of the case. See *Watkins v. Prudential Insurance Co.*, 315 Pa. 497, 507-508, 512, 173 Atl. 644 (1934); *MacDonald v. Pennsylvania R. R. Co.*, 348 Pa. 558, 566-567, 36 A. 2d 492 (1944); *Commonwealth v. Wucherer*, 351 Pa. 305, 311, 41 A. 2d 574 (1945); *Henes v. McGovern*, 317 Pa. 302, 310-311, 176 Atl. 503 (1935): *Geho's Estate*, 340 Pa. 412, 415-416, 17 A. 2d 342 (1941); *District of Columbia's Appeal*, 343 Pa. 65, 75-76, 21 A. 2d 883 (1941); 9 Wigmore, Evidence §2487, §2491 at 289 (3rd ed. 1940); 20 Am. Jur., Evidence §166 (1939) (cases collected).

In the present case, for the same reasons which justified the creation of the "commercial ownership-agency" presumption, the lower court was correct in holding that ownership of a non-commercial automobile raised a presumption that the use of the vehicle was with the permission of the owner.[3] The effect of this

---

[3] This presumption has also been recognized in other jurisdictions which have considered the question. *Rabaut v. Venable*, 285 Mich. 111, 280 N.W. 129-132 (1938); *Litalien v. Tuthill*, 75 Ida. 335, 272 P. 2d 311 (1954) (dicta); *Anderson v. Lehner*, 243 Iowa 851, 52 N.W. 2nd 513 (1952) (liability based on statute); *Ermann v. Kahn*, 242 N.Y.S. 573, 575 (1930), aff'd, 255 N.Y. 627, 175 N.E. 342 (1931); *Bryan v. Schatz*, 77 N.D. 9, 39 N.W. 2nd 435 (1949) (liability under family purpose doctrine); *White v. Keller*, 188 Ore. 378, 215 P. 2d 986 (1950) (liability based on agency). Many juris-

"non-commercial ownership-consent" presumption is the same as that of the "commercial ownership-agency" presumption—to require the defendant to come forward with credible evidence.

The burden of persuasion on the issue of the permission of the driver of the automobile remains with the plaintiff. *Cf. Walters v. Western & Southern Life Ins. Co.*, 318 Pa. 382, 388-390, 178 Atl. 499 (1935); *Waldron v. Metropolitan Life Ins. Co.*, 347 Pa. 257, 259-60, 31 A. 2d 902 (1943). Therefore, when the defendant assumes his burden of going forward with the evidence on the issue of permission and presents evidence clearly indicating that no permission was granted so that a jury could not reasonably find otherwise, then if the plaintiff fails to produce evidence that permission had been granted, the court should direct a verdict for the defendant.[4]

In the trial of the case defendant attempted to meet his obligation by adducing testimony that Koch did not have permission to use the Dreistadt automobile. Plaintiffs on the other hand, sought to shake the credibility of the defendant's witnesses through cross-examination and to elicit testimony from them that Koch did have permission. The court then properly permitted the case to go to the jury.[5] However, the evi-

---

dictions have by statute imposed liability upon the owner of an automobile for the negligence of one driving the vehicle with the owner's consent. We recognize no such liability in Pennsylvania.

[4] See the discussion of the problem in Levin, Pennsylvania and the Uniform Rules of Evidence: Presumptions and Dead Man Statutes, 103 U. of Pa. L. Rev. 1, 10-20 (1954).

[5] The court may not direct a verdict for the defendant in such a case because the jury must have the opportunity to resolve the conflicts in the testimony of defendant's witnesses. If the court is satisfied that a verdict in favor of the plaintiff represents a capricious disregard of the evidence, it may set aside the verdict and

dence was submitted to the jury under erroneous and prejudicial instructions, and therefore the verdicts returned in favor of the plaintiffs cannot be permitted to stand.

The trial judge charged the jury that the so-called presumption that one acts rightfully rather than wrongfully[6] shifted the burden of persuasion and required the *defendant* to prove Koch's *lack* of permission by the preponderance of the evidence. The "presumption" that one acts rightfully, like the "presumption" of innocence in criminal cases, is actually a judicial determination that the litigant who alleges the illegality, wrongfulness or impropriety of the acts of another party has the burden of producing evidence and persuading the factfinder on the issue.[7] Thus, a defendant asserting the illegality of the operations of a plaintiff in order to defend against liability must prove his contention by a preponderance of the evidence, *Horan v. Weiler & Ellis,* 41 Pa. 470 (1862), the same as a plaintiff must do when he seeks to recover for injury caused by the alleged wrongdoing of a defendant. *Cincinnati, N. O. & T. P. Ry. v. Rankin,* 241 U. S. 319 (1916). But this principle does not require that a party to a lawsuit who alleges the impropriety of the conduct of a *non-litigant* assume the burden of persuasion on the issue. So, in the present case plaintiff is given the burden of persuading the jury from all the

grant a new trial. *MacDonald v. Pennsylvania R. R. Co.,* 348 Pa. 558, 566-567, 36 A. 2d 492 (1944).

[6] See *Cherry v. Mitosky, Adm'r.,* 353 Pa. 401, 408, 45 A. 2d 33 (1946).

[7] The use of the term "presumption" in such cases is misleading. What is meant is that there are certain issues as to which this Court has determined for various reasons of policy that the burden of persuasion shall be borne by a party other than the one who normally would be expected to have this obligation.

evidence that Koch had the consent of Dreistadt to operate the automobile. *Laroche v. Farm Bureau Mut. Auto Ins. Co.*, 335 Pa. 478, 7 A. 2d 361 (1939) ; *Freshkorn v. Marietta*, 345 Pa. 416, 29 A. 2d 15 (1942) ; *Beatty v. Hoff*, 382 Pa. 173, 114 A. 2d 173 (1955). The court's instructions imposing the burden of persuasion on the defendant constituted reversible error.

The judgments are reversed and a venire de novo awarded. Costs to abide the event.

Mr. Justice BELL and Mr. Justice BENJAMIN R. JONES would enter judgment n.o.v.

———

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

On April 8, 1951, Earl R. Yowell and his wife, Viola Yowell, in accordance with a rather well established American custom, set forth in the afternoon for a relaxing Sunday drive. The anticipated happy diversion ended in disaster. Earl Yowell was killed, his wife's both legs were broken, and the car in which they were riding was totally demolished. The cause of the calamity was the negligent driving of a Ronald Koch who drove a Ford Sedan car, belonging to one Edward D. Dreistadt, into the Yowell automobile.

The administrator of the estate of the deceased Earl Yowell, brought Death and Survival actions, and Viola Yowell filed a personal injury action, against the author of their miseries, and obtained verdicts in the total sum of $57,000 against him. Since Koch, however, was apparently judgment-proof, the verdict winners sued the New Amsterdam Casualty Company, the car owner's insurance carrier, which, however, denied liability, asserting that Koch had no authority to drive Dreistadt's car. The case went to trial before Judge

WEINER and a jury in the Court of Common Pleas of Washington County, and the jury returned a verdict for the plaintiffs in the maximum amounts recoverable under the policy, a total of $18,417.50. The defendant insurance company appealed, seeking judgment notwithstanding the verdict. This Court has refused judgment n.o.v., but it has surprisingly ordered a new trial. By doing so it has, in my opinion, not only inflicted an injustice on the plaintiffs, but it is requiring a wholly unnecessary and superfluous thing. It is ordering a trial which has already been properly terminated, it is asking for the ascertainment of a verdict which has already been legally ascertained, it is compelling parties, witnesses, judge, lawyers and jurors to do what has already been correctly done—and all for no possible conceivable reason which can be justified in law, justice, or pragmatic perception.

The policy issued by the defendant insurance company insured Edward Dreistadt, the owner of the Ford car, and other persons operating the car with his permission, against any liability resulting from such operation. The plaintiffs averred that Koch had Dreistadt's permission to operate his car. The insurance company, speaking for Dreistadt, denied that Koch had such permission. Who told the truth? Since, unfortunately, no recording angel was standing around to write down just what Dreistadt said when he turned his car over to Koch, we can only arrive at the truth of the relationship between Koch and Dreistadt by studying all the circumstances in the case.

The insurance company contends that Dreistadt consigned his car to Koch only temporarily, that is, so Koch could wash, clean, and wax it, and that, therefore, Koch had no right to drive it anywhere for his own convenience and pleasure. The plaintiffs, on the other hand, maintain that Koch drove Dreistadt's car

with the latter's knowledge and consent. This conflict in positions, maintained energetically throughout the trial, created a factual controversy which was submitted to a jury. The jury, after hearing the evidence and deliberating on it, decided that Koch did have Dreistadt's authorization to drive the car and that, therefore, under the relevant provisions of the insurance policy, which no one disputes, the plaintiffs were entitled to recover from the insurance company. They rendered a verdict accordingly. And I submit that, under the law of the Commonwealth as it applies to the present record, we have no right to touch that verdict.

The Vehicle Code (Act of May 1, 1929, P. L. 905, 75 P.S. §231 (e) provides: "It shall be unlawful for any person . . . (e) To make use of or operate any motor vehicle or tractor without the knowledge or consent of the owner or custodian thereof . . ." Thus, we have at the outset of our study the unavoidable inference that Koch had Dreistadt's consent to drive his car. Without that presumption Koch would be guilty of a crime by the mere proof that he was behind the wheel since it is admitted that the car was not his own. And then, in addition to the presumption that Koch was innocent of crime, we have the rule that "The law 'presumes that every man, in his private and official character, does his duty, until the contrary is proved; it will presume that all things are rightly done, unless the circumstances of the case overturn this presumption.'" (*Rau v. Wilkes-Barre & E. R. R. Co.*, 311 Pa. 510, 514).

This rule is so old and well established that to wheel authorities into position to support it would be like firing a cannon in defense of the Statute of Frauds. In 1862 this Court declared in the case of *Horan v. Weiler & Ellis*, 41 Pa. 470, 472: that "A breach of law

is not to be presumed against any one." Further, that "he who alleges the contrary must prove it."

Assigning an innocent intention to the performer of a controverted act is not the matter of lighting a candle to the virtues of charity and good will; it is a declaration of sound law. There could be no peace in society, no wholesome attempt at business dealings, no progress in healthful human relationship if every movement of one's neighbor were to be regarded with suspicion, appraised with mistrust, and capped with condemnation. Hence, we have said: "When a man does an act, the presumption, in the absence of evidence otherwise is, that he acted rightfully and not wrongfully. This does the defendant no harm. He is perfectly at liberty to disprove the presumption, and show by any sufficient testimony that it does not apply in the given case," (*Winlack v. Geist,* 107 Pa. 297, 301.)

The Supreme Court of Oregon, in a case involving the very principle under discussion, announced, with no hairsplitting terminology, that: "The principle is thoroughly established in this state that if it is shown by any evidence that the instrumentality which caused injury was the property of the defendant, albeit some other person was operating it, the presumption is that such person was agent, servant or employee of the defendant and that a situation thus disclosed *is sufficient to take the case to the jury on behalf of the plaintiff, notwithstanding the defendant on his part may give strong testimony to the effect that the instrumentality was not under his control* but was under lease or was operated entirely without his authority." (*Sather v. Giaconi,* 110 Or. 433). (Emphasis supplied).

What is true in the State of Oregon is true in the commonwealth of conscientious fair dealing among mankind. Without such an inference, chaos would ensnarl the automobile law of the United States. With

millions of cars on the highways there *has* to be the presumption that the cars are being driven by individuals who have the owners' permission to drive them. In an organized society it must be assumed that the drivers of automobiles, the motormen of street cars, the engineers at the throttles of railroad locomotives, and the operators of elevators are not thieves. An unconscionable burden would be placed on every victim of a traffic accident at the very beginning of his lawsuit, if he had to show that there existed a contract of employment between the offending motorist and the car owner. It would be most unjust to require the victim of a highway accident to prove at the outset that the unknown driver of the unknown car, of the thousands which passed him, had the authority of the title holder to drive it.

The proprietor of an automobile has the responsibility of seeing to it, to the extent that the exercise of due care will accomplish it, that his car is not possessed by someone without right to have it. And when he asserts, in his defense, that his car was taken without his consent, he must overcome the presumption that he did give consent to the driver. Whether he is telling the truth or not becomes a question of fact for the jury to resolve.

When we board a street car we assume that the motorman is an employee of the railway company and in the event we are injured through his negligence we are not required to produce a list of the railway employees carrying the name of that particular motorman. When we enter a restaurant we assume that the waitress who serves us, is employed by the restaurant owner and is not a guest who, in a spirit of levity, dons an apron and pours coffee down our back. We assume as a matter of fact that a letter properly addressed reaches the addressee. We assume that a child born in wedlock

is legitimate. We assume that a person killed in an accident exercised due care. We assume that every person accused of crime is innocent. Without assumptions of that character society would degenerate into a community of faithless, suspecting, incredulous, querulous, contentious, fault-finding misanthropes ever ready to quarrel, backbite, assail and litigate.

The law will not permit so odious a state to come to pass and it accordingly has developed certain presumptions which are based on common sense, common decency, and common justice.

But the plaintiffs' case did not rest alone on the presumption that Koch was operating the car with the permission of the owner. Dreistadt himself admitted categorically that Koch had his permission to use and move the car. Dreistadt testified: "You can't wash down under the tires and everything to wash an automobile *if you don't move it.*" He testified further that he left the keys in the car so that Koch could drive it in the event traffic required him to do so: "On Sundays they don't bother you too much but when the traffic comes from the airport and that, they ask you to *move* your automobiles and if it has to be moved, there is nothing you can do about it." (Emphasis supplied.)

Dreistadt and Koch were not strangers to each other. The relationship between them was not merely predicated on the business of hire for a specified purpose. They had been friends for 15 years. Dreistadt testified: "Q. You said you have known him [Koch] since he was a little boy? A. Not much older than me—As long as I can remember I knowed Ronald. Q. Would that be 15 years? A. Yes, sir." The long period of friendship between these two men has no particular relevancy except that it lends verisimilitude to the proposition that it is more likely that Dreistadt

would allow a friend of 15 years' standing to use his car than that he would lend it to a professional car washer. It is particularly significant also that when Dreistadt was asked if this was "the first time that he [Koch] had ever had the use of your car?" he declined to answer.

One cannot read the record in this case without easily coming to the conclusion that the jury was justified in concluding that Dreistadt gave his car to Koch for the purpose of having him clean it, with the understanding that, in compensation, Koch could utilize the car for a ride of his own. Immediately after the accident, when Koch himself was taken to the hospital because of injuries sustained by him, a state police officer asked him how he happened to have Dreistadt's car and Koch replied: "This car that I was driving belongs to Ed Dreistadt. I take care of it for him by polishing it and keeping it clean. *He lets me borrow it in return.* Today we went for a ride towards Wheeling. I was driving. John Barea was sitting up front with me. Chuck Rota, Pete Roth, and Angelo Berelli were sitting in the back seat." (Emphasis supplied.) And that is how Koch got the car. He got it in compensation for work done on the car. He, thus, was driving the car which killed Earl Yowell, in the words of Dreistadt's insurance policy, "with his [Dreistadt's] permission."

The Majority does not dispute the above recited testimony. It does not claim that the verdict was improperly rendered. It offers no criticism that the verdict was against the evidence or against the weight of the evidence. It does not assert that the verdict was capricious. It contents itself with saying that the Trial Judge submitted the case to the jury "Under erroneous and prejudicial instructions and therefore the verdicts returned in favor of the plaintiffs cannot be

permitted to stand." But what those alleged "errone-
ous and prejudicial instructions" were, the Majority
has failed to reveal.

The object of a re-trial is to have the lower court
correct errors made in the first trial. The Trial Court
must accordingly be supplied with a lantern of direc-
tion, one which will save it from blundering on to the
wrong road supposedly travelled before. It must be
furnished with a sketch of some kind, a map or a plan
which will reveal the abysses, the holes, the depres-
sions in the highway which it should avoid. But this
case goes back without the feeblest ray of illumination
as to what the Trial Judge should do which the Trial
Judge failed to do in the old trial. This Court may
be dissatisfied with the manner in which the Trial
Judge charged the jury in the first trial, but at least
the issue in controversy reached the port of decision.
As the case stands at present, the issue goes to sea in
a rudderless bark, missing mast, sail, and bowsprit.
The judge who will preside over the new trial will have
no idea as to what this Court expects of him which
was not attended to at the original trial, and the law-
yers who will try the case will stand helpless before
this decision, bewildered as to what they should pre-
sent and how they should present it in order to satisfy
the unspoken, unrevealed, mysterious requirements of
this Court. Although I will have more to say in this
dissent, I wish to state at once that remanding this
case in its present state achieves the very acme of futil-
ity and the apogee of confusion.

And now to an analysis of the Majority Opinion.

The Majority Opinion says: "The burden of per-
suasion on the issue of the permission of the driver of
the automobile remains with the plaintiff." The burden
of proof to establish a prima facie case always remains
with the plaintiff. It is not a matter of persuasion;

it is a matter of proof. However, the presumption of permission, under the circumstances as outlined above, is enough to make out a prima facie case.

The Majority says further: "When the defendant assumes his burden of going forward with the evidence on the issue of permission and presents evidence clearly indicating that no permission was granted so that a jury could not reasonably find otherwise, then if the plaintiff fails to produce evidence that permission had been granted, the court should direct a verdict for the defendant."

I cannot accept this statement because it is ambiguous, circumlocutory, and indecisive. It is a merry-go-round of words and a ferry wheel of ideas, travelling horizontally, centrifugally, and vertically, but never reaching any destination beyond the original point of departure.

What would be the evidence which would "clearly indicate that no permission was granted"? Would it be so documentarily and mathematically conclusive that no type of contradicting evidence could successfully refute it? What the Majority overlooks and apparently cannot understand is that once the presumption of ownership is established, a jury's deliberation is inevitable. The Majority says that "if the plaintiff fails to produce evidence that permission had been granted, the court should direct a verdict for the defendant." What does the Majority mean that "the court *should* direct a verdict"? The word "should" presupposes no mandate or compulsion. Thus, the trial court, in such a situation, would still have a choice as to whether or not to direct a verdict. And if the trial court has a choice, is this not exactly the case where it *must* submit the issue to the jury? It is elementary law that there may be no directed verdict unless "it is inconceivable on any reasonable hypothesis that a mind

desiring solely to reach a just and proper conclusion
. . . after viewing the evidence in the light most advantageous to the plaintiff, could determine" the issue in the plaintiff's favor. (*Virgilio v. Walker,* 254 Pa. 244, 245.)

I have filed many dissenting opinions but this is one of the most difficult I have had to write because I must reply to a Majority Opinion which ignores the record, is indifferent to established law, and advances strange theories which have no basis in reason, logic, or known jurisprudence. For instance, the Majority says that the trial judge charged the jury "that the so-called presumption that one acts rightfully rather than wrongfully shifted the burden of persuasion and required the *defendant* to prove Koch's lack of permission by the preponderance of the evidence." (Emphasis in original.) But there is absolutely nothing in the record about the Judge charging anything on "burden of persuasion". Is it possible that the Majority is reading from a different record?

The Majority says also: "But this principle [what principle?] does not require that a party to a law suit who alleges the impropriety of the conduct of a *non-litigant* assume the burden of persuasion on the issue. So, in the present case plaintiff is given the burden of persuading the jury from all the evidence that Koch had the consent of Dreistadt to operate the automobile." (Emphasis in original.) In using the phrase "burden of persuasion" the Majority speaks of a trial as if it were a social function with the host or hostess seeking to persuade a guest to take another cup of tea, to join in a game of cards, or to participate in a rollicking quadrille. The function of contending parties is not to persuade but to *convince.* Generally speaking, to persuade means to appeal to the emotions, to the sensibilities, and to fancy, but to convince is to

appeal to the intellect and the integrities of logic, honesty, and justice.

The Majority says "The 'presumption' that one acts rightfully, like the 'presumption' of innocence in criminal cases, is actually a judicial determination that the litigant who alleges the illegality, wrongfulness or impropriety of the acts of another party has the burden of producing evidence and persuading the factfinder on the issue." What does this mean? The Majority explains that: "The use of the term 'presumption' in such cases is misleading. What is meant is that there are certain issues as to which this Court has determined for various reasons of policy that the burden of persuasion shall be borne by a party other than the one who normally would be expected to have this obligation." Here again we have the cryptic "burden of persuasion." Are we now to abandon presumptions and burden of proof and take up persuasions? While this Court may, by a majority vote, do anything it pleases, I do not believe it can, even with its supreme authority, change by a decision the nomenclature of jurisprudence. Nor do I think that it can with impunity substitute for words and phrases, which bear the imprint of approval of the centuries, novel expressions which neither inherently or by connotation impart precise and definitive meaning.

The Majority Opinion runs with citations, it is peppered with names and numbers of litigated causes, but I am constrained to say that not one of them supports the finally announced decision and, as a matter of research, it develops that most of them bear no relevancy whatsoever to the issue on appeal. It might be germane at this juncture to ask what is the issue on appeal. It certainly is not what the Majority discusses in its digit-studded opinion. The defendant insurance company asks for judgment n.o.v., not for a new trial.

Instead of discussing whether the defendant is entitled to judgment n.o.v., or whether the plaintiffs should hold the verdict awarded them by the jury, the Majority announces that the plaintiffs have the burden of persuasion—to persuade what? The Majority does not say. The Majority says that the plaintiffs must persuade the factfinder on the issue— but what is the issue? One searches in vain for a delineation of the issue in the Majority Opinion. The insurance company, however, well defines the issue in its brief when it says: "By various pleadings filed in the case the only real issue was joined in regard to whether the driver, Ronald Koch, was operating with the permission of the owner and assured, Edward Dreistadt."

*That* was the issue and it was decided by the jury after the Trial Judge had instructed them in a charge that was abundantly clear in its meaning, strictly impartial in its presentation, and adequately comprehensive in its discussion of the law and the facts involved. In speaking of the presumption that every person has conformed to the law, the Trial Judge emphasized that this was a *rebuttable* presumption. He then explained: "This presumption operates for the benefit of the plaintiff, as I have already said, members of the jury, unless the same is overcome by the evidence offered by the defendant, which in this case contends that the operation of the Ford in question, at the time of the accident by Ronald Koch, was not with the permission of the insured; that Edward F. Dreistadt never authorized or permitted Ronald Koch to drive the car away from in front of the home of Ronald Koch where it had been placed by Edward F. Dreistadt, the owner, under an agreement with Ronald Koch to wax and polish it; that Ronald Koch had agreed to wax and polish the car of Edward F. Dreistadt; and that he did not have permission to use it for his pleasure or

his own use has also been testified to by Edward F. Dreistadt, the insured and owner of the car, and by Ronald Koch himself, the operator at the time of the accident and collision."

The Trial Judge made clear that the burden of proof devolving on the plaintiff never changed: "If you are not satisfied by a preponderance of the evidence under the law as given to you by the Court that the plaintiffs in this case are entitled to a verdict, you will return and use that verdict which has already been prepared on behalf of the defendant."

Perhaps I may seem unduly critical in this Dissent but I cannot let go unchallenged other statements in the Majority Opinion which can find no support in the law of Pennsylvania. For instance, the Majority says: "If the defendant fails to introduce credible evidence negating agency, then the issue is decided in favor of the plaintiff as a matter of legal ruling." It is not enough to say that this statement is unwarranted. It cannot be described negatively. It must simply be labelled as *wrong*. If the defendant presents evidence which involves credibility, an issue arises which must be submitted to a jury. Credibility is always a question of fact, and never a question of law. And, therefore, never "a matter of legal ruling."

The Majority climbs still higher on an unbuttressed ladder when it says: "If the defendant does offer credible evidence to the contrary the presumption disappears as a rule of law and has no further effect upon the outcome of the case." Here, again, the Majority does not merely reason faultily. It makes a statement which is *wholly incorrect, without any saving virtue whatsoever*. A presumption does not disappear merely because the defendant offers credible evidence to the contrary. When the defendant offers evidence controverting the presumption, a question of fact arises for a

jury's deliberation, namely: Does the evidence overcome the announced presumption? Evidence may be credible and yet not preponderate over the presumption. A question of fact still remains as to whether the presumption has carried the day with its burden of proof as against the evidence submitted by the defendant.

No worthwhile purpose will be served in any further discussion of the matter. I hope I have made it abundantly clear that I wholly disagree with the Majority Opinion because it is incongruous in its findings, illogical in its exposition, and unauthortative in its conclusions. I hope further that I have left no doubt that it is my firm conviction that the Majority has unjustly deprived the plaintiffs of a verdict which they won fairly and squarely before a jury under proper instructions by the court; and to require the plaintiffs to undergo the travail of another trial is an arbitrary act of judicial usurpation.