# Commonwealth v. Binns

*Esther Sylvester,* for Commonwealth.

*Stanford Shmukler, and Thomas B. Rutter,* for defendants.

SMITH, J., January 13, 1972.—Each of these defendants stands accused of a number of instances of wrongdoing, allegedly committed in the course of performance of his duties while employed as a clerk by the Prothonotary of Philadelphia County. The Commonwealth asserts that each, while charged with the duty of receiving and officially stamping papers being filed for institution of legal actions, accepted sums of money from the persons filing them in return for predating them to dates earlier than those of actual filing, and then secreted, destroyed, altered or

otherwise falsified records of the office to conceal the irregularity. Defendant Binns is charged with having done this on 24 occasions, Gargiulo eight times, Brennan once.

The Commonwealth charges that each such instance of alleged misconduct constitutes 10 different violations of law, i.e. embezzlement by tax collector (18 PS §4823); false entries, destroying and abstracting public records (18 PS §4323); bribery of servants and employes (18 PS §4667); embezzlement by public officers (18 PS §4822); destroying or mutilating books of a corporation (18 PS §4846); bribery of governmental officers and employes (18 PS §4303); forgery and defacing records (18 PS §5020); larceny by employe (18 PS §4815); malfeasance, misfeasance, nonfeasance and misbehavior and misconduct in office (a common law offense); and conspiracy (18 PS §4302).

Each violation so charged has been made the subject of a separate single-count indictment, with the result that Binns is made defendant in 240 indictments, Gargiulo in 80, Brennan in 10. All 330 are presently before the court on applications by all three defendants for various forms of pretrial relief.

## I. APPLICATIONS TO QUASH FOR PRETRIAL PUBLICITY

In support of this motion, defendants urge that news media publicity given these charges at the time defendants were discharged and arrested was so widespread and so violently prejudicial as to make their receiving a fair trial an absolute impossibility not merely in Philadelphia County but anywhere in the Commonwealth. On the considerations urged at oral argument of this motion and careful evaluation of the exhibits attached to defendants' applications,

the hearing judge is unable to so conclude. The normal safeguard against widespread prejudice engendered by pretrial publicity and public excitement is a motion for change of venue. Such motion may always be made if actual examination of successive panels of veniremen, before trial, indeed shows it would be difficult to the point of real impossibility to select an unprejudiced jury. Also, the information developed through that process of jury selection is likely to be much more trustworthy and direct than a judgment attempted at this juncture as to how widespread and damaging was the effect of the news media publications to which reference is made. It is begging the question to argue unprejudiced jurors cannot be found in Philadelphia, because anyone who declares himself unaffected by the publicity is either lying, doltish, a pauper or a recluse; this assumes the publication has totally infected the mental climate of the community, the very fact at issue. Neither is the court persuaded, should grounds for change of venue prove to develop, that the communities of very many counties of the Commonwealth have so much as heard of these cases, let alone predetermined them adversely to defendants. The applications to quash on this ground are denied.

## II. APPLICATIONS FOR CONTINUANCE

For the same reasons, defendants' motions to have trials of the cases postponed indefinitely until the assertedly adverse effects of pretrial publicity have been dissipated, are denied. The hearing judge does not, on the present showing, deem the public notice given the matter so damaging as to require such a postponement, even were trial being held soon after the date of the news publications. The 10 months already elapsed since the time of the publications

or other statements from public officials to which defendants object is, in the court's opinion, a sufficient interval to dissipate such prejudice, if any, as those utterances may have engendered. Nor is there any present occasion, in the court's judgment, for issue of an order restraining further statements, by either news or official sources, concerning these cases. Public interest in the matter, on present evidences, is at nowhere near such high pitch as to require such a safeguard.

### III. APPLICATIONS FOR SEVERANCE

The hearing judge is persuaded that the trial of each defendant should be severed from that of the others. The wholly disproportionate number of occasions of wrongdoing of which any one defendant is accused, in comparison with another, presents the grave risk that a single jury would confuse the issues of guilt or innocence of the individual defendants, and be inflamed by sheer weight of numbers of proofs into verdicts of guilty of all defendants, or acquittal of those accused of fewer occasions of wrongdoing. The applications for severance are granted.

### IV. APPLICATIONS FOR SEVERANCE OF CHARGES

The applications for separate trial of each offense, or of each group of offenses charged as arising out of the same occasion of alleged wrongdoing, are denied. After careful consideration, the hearing judge concludes that the several instances of wrongdoing charged, though of different date, have far more elements in common than diverse. Difference in defense arising from such factual diversity of one occasion from another does not appear unduly burdensome, while, on the other hand, the Commonwealth has

some claim to be spared repeated production of the same witnesses, and to have its jury and judicial man-hours conserved.

## V. APPLICATIONS FOR COPIES OF STATEMENTS AND DISCOVERY

These applications are moot, and are considered by the hearing judge to be withdrawn, in view of the agreement of prosecution and defense counsel announced to the court that the public records of each suit supposedly the occasion of each defendant's wrongdoing, would be made accessible to defense counsel for study, and copying desired by him. It is the hearing judge's view, however, that defense counsel should be at liberty to examine not only the parts of the record of each case to which the public normally is entitled to have access, i.e. the docket and the case jacket and file, but any of the internal administrative records of the prothonotary's office relating to the cases concerned, or covering the dates involved, not normally available to the public, as daily records of filing charges paid, sequential records of file numbers or court terms assigned to suits newly instituted, etc., and any other internal administrative record existing in the office relating, whether by reference or omission, to the 33 suits allegedly backdated. To the extent defense counsel may deem it necessary, he or they should be entitled to a disclosure of and an opportunity for an examination of all such records in the presence of a designate of the prothonotary, and defense counsel may apply to this court for such an order, if necessary.

## VI. APPLICATIONS TO SUPPRESS STATEMENTS

These applications are denied. The warnings of constitutional privilege against selfincrimination mandated by Miranda v. Arizona, 384 U.S. 436, 86 S.

Ct. 1602, 16 L. Ed. 2d 694, are required as to persons in police custody or otherwise deprived of their liberty in any significant way, and while suffering such restraint, are subjected to police interrogation. These defendants, while questioned by Mr. Cortese, the prothonotary, their immediate employer, were in no sense deprived of their liberty, neither was he a police or any other variety of law enforcement officer. He was a public officer, but this was an element inseparable from defendants' employment, and they were not in his custody. The court is pointed to no authority extending the requirement of warnings of constitutional privilege against selfincrimination to an employer who questions an employe suspected of wrongdoing.

The argument is made, however, that a selfincriminating statement taken by a superior public officer from his subordinate, under threat of discharge, is a coerced confession which must be suppressed, apart from any question of utterance of warnings of constitutional privilege beforehand. Garrity v. New Jersey, 384 U.S. 493, 87 S. Ct. 616, 17 L. Ed. 2d 562 (1967), held this clearly, and if there were any showing here that Prothonotary Cortese had threatened these defendants with being fired from their positions at any time during the making of their statements, the suppression of their statements would be absolutely required by the Garrity holding. But the brief of defense counsel frankly disclaims any such factual contention, and limits the applications to suppress to the ground that, if testimony were taken, it might show promises made subsequent to the taking of the statements. The purport of these promises, it is suggested, would be that if defendants cooperated with the official investigation into misconduct in the office, they would receive only short suspensions

from duty. Such promises after the fact could not have been the inducing cause of the already completed statements and cannot be held to render them anything but voluntary; therefore, entirely admissible.

## VII. APPLICATIONS FOR BILL OF PARTICULARS

The grant of a bill of particulars is a matter within the discretion of the court: Commonwealth v. Frye, 433 Pa. 473, 252 A.2d 580 (1969), cert. den. 396 U.S. 932, 90 S. Ct. 273, 24 L. Ed. 2d 237. As presented, those applications are denied. Their purpose, in the hearing judge's view, will very largely be served by the liberty the court believes should be extended defense counsel in examination of the records of the prothonotary's office adverted to in section V of this opinion.

## VIII. APPLICATIONS TO QUASH CERTAIN INDICTMENTS AS DUPLICITOUS

A. *Embezzlement by tax collector: indictments 1808 through 1831 (Binns); indictments 1736 through 1743 (Gargiulo); Indictment 1726 (Brennan).*

The indictments charging the above offense are couched each in a single count that defendant "did embezzle, convert and appropriate the monies so collected to his own use" or, in the disjunctive, "did aid or abet or was an accessory to such an act." Thus, in the same count, defendant is charged with being a principal or an accessory in the same misconduct.

Specificity in an indictment is designed to serve two purposes, to alert defendant to the charge against which he must defend, and to provide him with the protection of a verdict, whether of guilt or innocence, against a second prosecution for the charge laid in the first indictment. It is for the second

of these reasons that a single count of an indictment is required to charge only a single crime, since, by long standing practice, only one verdict may be returned to each count of an indictment, and if a single count charges more than one offense, it will be impossible to determine whether a verdict, either of guilt or innocence, is returned to one, or which one, or both charges, or whether it must be held a bar to a later second prosecution for one or the other.

These indictments, charging defendants with being either principal or accessory, are not fatally defective for failing to specify what must be defended against, for it is proper that an indictment charge principalship or accessoryship if done in different counts: Commonwealth v. Weldon et al., 159 Pa. Superior Ct. 447, 48 A.2d 98. The uncertainty in which defendant in such an indictment is left is no less than here. But these indictments are fatally defective and duplicitous, because they charge both offenses in a single count and render the effect of the single verdict returnable on the count vague and uncertain, depriving defendant of its protection against further prosecution: The Confiscation Cases, 87 U.S. 92; Ackley v. United States, 200 Fed. 217 (8th Cir.). The same conclusion is the logical and necessary converse of the holding of Commonwealth v. Weldon, supra.

Accordingly, these indictments are quashed.

B. *False entries, destroying and abstracting public records: indictments 1832 through 1855 (Binns); indictments 1776 through 1784 (Gargiulo); indictment 1723 (Brennan).*

The single count by which the above charge is laid asserts defendant "did make false entries in, or did erase, alter, secrete, carry away or destroy a public record or a part thereof." The defense challenge to

this language is that it, too, disjunctively charges different offenses.

The controlling principle of law will be found to have various phrasings, thus:

(1) Separate acts performed as parts of the same transaction and constituting phases of the same offense, may be charged in one count: Commonwealth v. Cese, 176 Pa. Superior Ct. 650, 109 A.2d 228;

(2) Distinct and separate acts which are successive steps in a final wrongful act may be joined in one count though separately each might constitute a complete offense itself indictable: Commonwealth v. Saler, 84 Pa. Superior Ct. 281, 176 A. 914.

A valid distinction can be made between reciting alternate means or methods of committing the same substantive offense and charging different offenses. The indictments here under attack, in the hearing judge's view, are sufficiently capable of being understood to charge acts which are phases of, or successive steps in, commission of the ultimate offense that they must be held not duplicitous. Erasure or alteration or secretion or destruction of even one pen stroke in a public record could be an act leading to the ultimate offense of effecting falsity of entry. These applications are denied.

C. *Bribery of servants and employees: indictments 1856 through 1879 (Binns); indictments 1768 through 1775 (Gargiulo); indictment 1719 (Brennan).*

The attack made on the indictments charging the above offense is that though they accuse defendants plainly enough of soliciting a bribe, they disjunctively state the bribe was "for doing or omitting to do an act or for showing favor or disfavor, etc." The hearing Judge is of the opinion that the crime itself

is charged with complete clarity, and the remainder of the language relates only to the particular motive on the defendant's part which induced its commission. It is not required that the Commonwealth individuate among a defendant's motives, in an indictment. The applications are denied.

D. *Embezzlement by public officers: indictments 1880 through 1903 (Binns); indictments 1784 through 1791 (Gargiulo); indictment 1725 (Brennan).*

In these indictments, the above charge is made in language that each defendant "did convert to his own use, or did use by way of investment a portion of the public money intrusted to him . . . or did prove a defaulter, and did fail to pay over the same when thereunto legally required . . . or did aid or abet or was an accessory to such act."

Section 822 of The Penal Code of June 24, 1939, P. L. 822, 18 PS §4822, under which this indictment is drawn, is derived from section 65 of The Penal Code of March 31, 1860, P. L. 382, employing the identical language. An indictment drawn under section 65 of the Code of 1860, in the language "did convert to his own use or did use by way of investment . . . or did prove a defaulter, or did fail to pay over the same when thereunto legally required," was challenged for duplicity in Commonwealth v. Mentzer, 162 Pa. 646, and was there held to be not duplicitous. The Supreme Court said:

"The four specified acts may therefore be four distinct and separate offenses, or they may be so entirely parts of the same transaction that they combine to make but one. Into which category they fall must depend on the facts of each case, and therefore must raise a question for the jury. That being so there is no legal difficulty in joining two or more such acts in one count."

To the same effect is Commonwealth v. Carson, 21 Pa. Superior Ct. 48. Under these authorities, the indictments would have to be held unexceptionable for charging conversion of public moneys to defendant's own use or using the same by way of investment or proving a defaulter or failing to pay over the same on demand, etc. But these indictments do not stop there, they continue in the disjunctive, to charge accessoryship after the original accusation of principalship. Under the authorities cited supra in subsection A of this section of this opinion, they are thus rendered fatally duplicitous and are quashed.

E. *Destroying or mutilating books of a corporation: indictments 1904 through 1927 (Binns); indictments 1728 through 1735 (Gargiulo); indictment 1721 (Brennan).*

The charge above is in these indictments laid in the language "did destroy, alter, mutilate or falsify certain of the books, papers . . . or did make or concur in the making of false entry or material omission . . ." As with the indictments treated in subsection B above, the acts so charged can be fairly viewed as phases or successive steps in commission of the single, ultimate offense, partial or entire destruction of corporate records. Making or concurring in the making of a false entry, as distinguished from a disjunctive charge of principalship or accessoryship, would seem both to be acts of a principal. These applications are denied.

F. *Bribery of governmental officers and employees: indictments 1928 through 1951 (Binns); indictments 1792 through 1799 (Gargiulo); indictment 1718 (Brennan).*

These indictments lay the above charge in the words "did accept or receive or agree to accept or receive monies, goods, or other things as a bribe." This is

attacked as fatally disjunctive and as combining different offenses. Commonwealth v. Saler, 84 Pa. Superior Ct. 281, is cited for its holding duplicitous an indictment in a single count charging manufacturing, selling, transporting, possessing and delivering intoxicating liquor. In the opinion of the hearing judge, these indictments do not fall under the Saler interdict. The agreement to accept and receive a bribe and its actual acceptance or receipt coalesce so indistinguishably that it is impossible to say where one ends and the next begins, or to hold these other than parts of the same transaction. These applications are denied.

G. *Forgery, defacing the records: indictments 1952 through 1975 (Binns); indictments 1800 through 1807 (Gargiulo); indictment 1722 (Brennan).*
The words by which the above offense is charged in these indictments are: "did forge, deface or falsify a registry, acknowledgement, or certificate, or did alter, deface or falsify a minute, document, book or any proceeding whatever, of, or belonging to, a public office, or did cause or procure any of said offenses to be committed, or was in any wise concerned therein." It might be possible to hold nonduplicitous the assorted verbs, "forge, deface, falsify, alter, etc.," in which the offense is described, under the principles adverted to above, that these acts are but parts of the ultimate substantive offense. But it is impossible to say as much for the grammatical objects of these verbs, "registry, acknowledgement, certificate, minute, document, book, or any proceeding whatever . . ." These indictments leave the defendants at an utter and total loss to know what record they are charged with falsifying. These indictments are duplicitous in the extreme and are quashed.

It seems not to be understood by the draftsmen of

indictments such as these that because a penal statute quite rightly casts a dragnet, in order to include a great variety of assimilated offenses, it does not follow that an indictment should cast the same dragnet, ipsissima verba. When it does, it skirts the perilous edge of the precipice of duplicity. The draftsman of an indictment is called upon to choose from among the varieties of actions or objects of criminal conduct caught up in the statutory dragnet and fix on those which represent the particular conduct he is seeking to prosecute. It is entirely correct that an indictment be cast in the language of the statute, but just as incorrect that it copy it slavishly, repeating everyone of its alternatives, thus charging everything and so, in the end, nothing. An elementary understanding of the task of an indictment ought to be equal to making a selection from among the various phrasings of the statute, the selection of that which fits the particular case, with the indictment then to be cast in that part, but not every line and word of the Act of Assembly.

H. *Malfeasance, misfeasance and nonfeasance: indictments 2000 through 2023 (Binns); indictments 1752 through 1759 (Gargiulo); indictment 1727 (Brennan).*
The challenge to these indictments is that the first two of this classic trio of nouns connote positive acts, sins of commission; the third, failure to act, sins of omission. The dialectics of when a negative becomes a positive, or the reverse, need not detain us. These indictments, beginning with general characterizations like this trio and "misconduct and misbehavior in office," come to the point of an unmistakable specification, ending "to wit . . . did receive various amounts of money for predating and did predate the filing date on various documents received by

him in his official capacity, etc." Nothing could be plainer. The applications to quash these indictments are denied.

I. *Conspiracy: indictments 2024 through 2047 (Binns); indictments 1760 through 1767 (Gargiulo); indictment 1720 (Brennan).*

Here, the charge is conspiracy to commit the unlawful acts made the subjects of the previous indictments. The fact that certain of these previous indictments have been poorly drawn and are quashed by order set forth herein does not affect in any way the validity of these conspiracy indictments, charging simply that defendants engaged in concerted action toward commission of the specified criminal misconduct, whether or not that specified misconduct is independently made the subject of other indictments. These applications are denied.

## IX. APPLICATIONS TO REQUIRE THE DISTRICT ATTORNEY TO ELECT BILLS FOR TRIAL

These applications complain that the district attorney has multiplied the number of charges against these defendants with the sole object of harassment and improvement of the Commonwealth's numerical chances of conviction. It may be no accident that the extremely sensitive area of holding public office and being in charge of public records is ringed about with so many different sections of our penal laws that one act of corrupt misconduct represents 10 violations of the criminal law. The integrity of public office and the critical importance, even sanctity, of public records may be so highly prized by the public that all these guards are intentionally mounted around that point in our government.

The presumption of innocence applies not only to one accused of crime but attaches to anyone's con-

duct in any matter or act whatsoever, in the first instance, until the contrary is shown by him who so charges: Winlack v. Geist, 107 Pa. 297; Breiden v. Paff, 12 S. & R. 430. The hearing judge is unwilling to infer that the great multiplicity of indictments here is prompted by any sinister or malign, or oppressive motive on the part of the Commonwealth's attorney. Whether to bring 10 indictments of 24 counts, or eight counts each, or 240 or 80 of a single count each, would appear to be a free administrative choice. There is no showing at this juncture, as in Commonwealth v. Balles, 160 Pa. Superior Ct. 148, 50 A.2d 729, that charges have been deliberately multiplied, that some are baseless, and that some are intended to inflame prejudice.

These applications are denied.

## X. APPLICATIONS TO QUASH FOR FAILURE TO STATE OFFENSES UNDER PENNSYLVANIA LAW

This application is based on the fact that nine groups of indictments charging conduct made criminal by statute, conclude with the words of art "against the peace and dignity of the Commonwealth of Pennsylvania," rather than "contrary to the form of the Act of General Assembly in such cases made and provided." Since enactment of Rule 214 of the Pennsylvania Rules of Criminal Procedure, all that is required in any indictment as a reference to the legal foundation for it is the language used here.

These applications are denied.

### ORDER

Now, to wit, January 13, 1972, the applications for severance of trials of the above defendants are granted.

As to defendant Binns, indictments nos. 1808

through 1831, 1880 through 1903 and 1952 through 1975, March 1971, are quashed.

As to defendant Gargiulo, indictments nos. 1736 through 1743, 1784 through 1791 and 1800 through 1807, March 1971, are quashed.

As to defendant Brennan, indictments nos. 1726, 1725 and 1722, March 1971, are quashed.

The applications for copies of statements and for discovery are mooted.

All other applications are denied.